## Agib Ricketts' Appeal.

The failure of a complainant to sustain the positive averments of actual fraud contained in his bill will not, of itself, entitle the defendant to a dismissal of the bill, when there is proof of constructive fraud.

------

NOTE.—Amendments to answers are discretionary with the court. Leach v. Ansbacher, 55 Pa. 85. Such have been permitted after replication filed (Wilson v. Anderson, 13 Montg. Co. L. Rep. 44); after the record has been remitted to the master for further proceedings (Consolidated Oil

Where a trustee voluntarily becomes an indorser on a note of his *cestui que trust*, it is contrary to the policy of the law to allow him to use the judgment obtained against the *cestui que trust* on this note, as the basis of an adverse title in himself.

The granting of amendments to an answer to a bill in equity is a matter within the discretion of the court. In this case, a refusal to permit defendant to amend his answer so as to interpose the defense of the statute of limitations after an argument upon the bill and answer, was *held* to be a proper exercise of this discretion.

It was not error to charge a trustee with the rents, issues, and profits from the time the interest of the *cestui que trust* accrued without allowing for expenditures made during the life of a party having a prior life interest in the fund, although, as alleged by the trustee, the profits were greatly increased by such expenditure.

(Argued April 15, 1887. Decided January 16, 1888.)

January Term, 1887, No. 12, E. D., before Mercur, Ch. J., Gordon, Trunkey, Sterrett, Green, and Clark, JJ. Appeal of Agib Ricketts, defendant, from a decree of the Common Pleas of Luzerne County, in equity, dismissing his exceptions to a master's report and setting aside a judgment and sheriff's sale thereunder, and ordering him to account for rents and profits. Affirmed.

The bill was filed by Charles Streater, complainant, and sets forth:

That complainant is a devisee and legatee under the will of Charles Streater, deceased, by which will an undivided half of a certain lot of land in the city of Wilkesbarre was devised to one Rev. G. D. Miles in trust to receive and pay over the rents, issues, and proceeds to William Streater, a son of the testator, during his life, and from and after the decease of said William, then upon further trust to receive and pay over the said rents, issues, and proceeds to Sarah P. Streater and complainant, share and share alike, they being grandchildren of the testator;

That in 1864 the said Miles resigned the trust, and the defendant was appointed trustee in his stead;

That William Streater died January 11, 1874;

That on the 6th of December, 1869, a suit was brought by

Well Packer Co. v. Jarecki Mfg. Co. 157 Pa. 342, 27 Atl. 543, 545). It has been refused when the application was made after the argument of exceptions to the master's report. Everhart's Appeal, 106 Pa. 349. And after a decision adverse to the defendant on the merits. Lexow v. Pennsylvania Diamond Drill Co. 5 Pa. Dist. R. 499.

Brown & Gray in Luzerne county, against complainant upon a promissory note for $275, dated May 18, 1868, which note was not stamped; and therefore the judgment and proceedings upon it were invalid and void;

That on the 10th of January, 1870, a judgment was obtained in said suit against complainant, and fieri facias issued and levy made upon complainant's interest in said land, and that without notice to complainant, a venditioni exponas was issued, upon which his said interest was sold by the sheriff to respondent, for $105;

That complainant was born December 9, 1849, and therefore was a minor when said suit was brought and said sheriff's sale was had;

That in the spring of 1861 he had been bound in the naval service of the United States as a messenger boy, and had continued at sea until 1867, and had been kept in ignorance of his rights under said will until a short time before bringing this suit;

That he never knew or heard of the note upon which said suit was brought against him; that he never signed such note; that he never had notice of the suit, or any of the proceedings under it, including the sheriff's sale, until his counsel informed him of them on the 22d of January, 1883; and he never therefore had an opportunity to defend himself; and that the note upon which said suit was brought was not his note;

That although said suit was in the name of Brown & Gray, yet they never had any interest therein; that defendant employed counsel to bring the suit, desiring to obtain a judgment so that he could sell out and buy in for himself complainant's aforesaid interest; and that the price bid for it was wholly inadequate.

The prayer is for an injunction against conveying away said interest, and that the said judgment and sheriff's sale may be declared void, and the defendant compelled to convey said interest to complainant, and to account for the rents and proceeds.

The answer sets forth:

That the statements of the bill as to the complainant being a devisee in the will of his grandfather, and as to the appointment of defendant as trustee, and the death of complainant's father are true;

Also that the statements as to suit being brought upon the

note, and judgment being obtained thereon, are true; but that it is not true that Brown & Gray were only nominal parties; on the contrary, they were the actual holders of the note which was duly stamped; and the suit and judgment were actually in their favor. That the only connection of defendant therewith was having indorsed the note for the accommodation of complainant and at his request, and being compelled to pay the amount of the judgment;

That defendant did purchase complainant's said interest at sheriff's sale; but it is not true that no notice was given to complainant; on the contrary the sheriff took special pains to give the requisite notice to him and made the proper return and proof thereof, and the court regularly ordered the writ of venditioni exponas. And defendant was not the owner of the judgment at that time and did not become such until after the sheriff's sale when he was compelled to pay the amount of it, and took an assignment of it;

That defendant has no knowledge of complainant's age, and only knows from information, partly received from complainant himself, that he was put on board a man of war in the hope of reforming evil tendencies early exhibited;

That the other statements of the bill are untrue and scandalous, charging as they do, not only the defendant with having gotten up a false note, and suit and judgment thereon, but also the sheriff with having made false returns;

That the simple truth was that in 1868 complainant came to defendant and asked him to go his security for a pair of mules to enable him to go into boating on the canal, giving as a reason for such request defendant's knowledge of complainant's interest in his grandfather's estate whereby he could be secured; defendant declined, telling him to go to some of his relatives; complainant declared that they all treated him as an outcast, and, admitting his former misconduct, declared his desire and intention of reforming, and asked defendant to help him so to do, and to get into business to do something for himself; upon this theory defendant agreed to become his security, and complainant subsequently brought a note drawn up by Joseph Brown for $275, signed by complainant and one Daniel McDaniels, which defendant indorsed; upon maturity of the note it was duly protested and defendant notified as indorser; suit was brought by Brown & Gray, holders of the note, and the judgment obtained

and sheriff's sale mentioned in the bill made.  At the first sheriff's sale a lawyer appeared in the interest of complainant and bid up the interest against one Peter O'Donnell to whom it was finally struck down.  O'Donnell refusing to comply with his bid, the sheriff again exposed it to sale, when defendant was compelled to purchase because no one would bid the amount of the judgment; and after the sale defendant paid the whole amount of the judgment to the plaintiffs therein, and took an assignment of it.

After this defendant could not find complainant, and did not again see him until 1878, when he again came to defendant asking his help to relieve him from arrest for improperly appropriating the property of another.  Defendant again went his security for a small amount, and subsequently paid that also; the complainant at the time promising to come in and have a settlement with defendant, but never so doing.

The master, L. H. Bennett, Esq., to whom the cause was referred, reported, *inter alia,* as follows:

It does not appear from the testimony that the defendant has ever accounted to the plaintiff for any moneys received by the former as trustee, whether as rents for the real estate in question, or dividends on the stock standing in his name as trustee, or interest or proceeds of cash coming from the estate of Charles Streater, Sr.  Nor does it appear that otherwise than by the present bill filed in January, 1883, the plaintiff has ever demanded an accounting of the defendant, except in this way, namely:  In September, 1882, the plaintiff petitioned the orphans' court of this county for an account from the defendant of moneys received by him as trustee under the Streater will aforesaid, and for his removal from office.  That proceeding being pending when this bill was filed, the defendant on March 9, 1883, filed his plea to the whole bill in this case, alleging therein that the proceedings in the orphans' court were for same object as this suit.

The plea was referred to a master of this court, who reported that the orphans' court proceedings included only a part of the incidental relief sought in this case, to wit: an accounting which in that court could only be, so far as related to rents of real estate, anterior to the date of the conveyance thereof as alleged in this bill.  Thereupon said plea was disallowed.

.The plaintiff, Charles Streater, was born December 9, 1848. For the period from 1861 to 1867 he was absent from Wilkesbarre most of the time, being first in the United States Navy, then in the army, and finally in the merchant marine service. His father and mother not living together, he practically was without a home, and his habits had become unsatisfactory to his relatives living about here.

The plaintiff and one Daniel McDaniels had conceived a plan of buying a pair of mules and harness of John Rainow and going to work upon the canal. They had no money and Rainow refused to trust them for the property. The plaintiff had applied to his relatives for assistance in making the purchase, and they had refused to trust him, on account of his unsteady habits. On May 18, 1868, the plaintiff met Mr. Ricketts, the defendant, for the first time in his life; reported his difficulties about purchasing the mules, the plan of himself and McDaniels about going upon the canal, and the failure to secure help from his relatives, and the reasons they had assigned therefor; he asked Mr. Ricketts to go his security on the ground or basis of his, the plaintiff's, interest in his grandfather's estate, then in Mr. Ricketts' hands. The latter first declined giving assistance, stating that plaintiff's interest depended on his surviving his father, and was uncertain and of no present value. But upon plaintiff's assurances that with an opportunity he was going to do better, that he would pay for the mules from time to time and would frequently report progress to Mr. Ricketts, the latter consented to help him. Accordingly, on May 18, 1868, plaintiff and McDaniels executed a note at eighteen months to the order of defendant for $275, with interest, which note was then stamped with a fifteen cent United States internal revenue stamp, duly canceled, and indorsed by defendant and given by the plaintiff and McDaniels to John Rainow, in payment of the mules and harness. Plaintiff and McDaniels took their property and went down the canal; and in a few days McDaniels had absconded with one of the mules and plaintiff had sold the other. He was not afterwards seen by Mr. Ricketts until the year 1878.

When the note aforesaid came due on the 20th of November, 1869, it was in the hands of Brown & Gray, bankers, for collection for Rainow, and was duly protested for nonpayment. The attorney for the bank thereupon called upon Mr. Ricketts for

payment. The latter, conceding his liability, suggested nevertheless that he was only the accommodation indorser; that if the bank would get judgment against the makers and sell Charles Streater's interest in the real estate in question, he, Mr. Ricketts, would bid the property up to cover the judgment or see that the holders got the money. Accordingly, on the 6th of December, 1869, the attorney for the bank brought an action of debt to No. 297, January term, 1870, in the court of common pleas of this county, at the suit of Brown & Gray, against Charles Streater and Daniel McDaniels, on the same day filing a statement and copy of the note in question. The summons was duly returned by sheriff as having been served "December 15, 1869, personally, on Charles Streater, defendant, by giving him a true and attested copy thereof, and making the contents thereof known to him," and *nihil* as to McDaniels.

January 10, 1870, judgment was taken against Charles Streater for default of appearance for $302.13 and costs, and January 19, 1870, a writ of fi. fa. issued thereon against Charles Streater, impleaded with Daniel McDaniels. On this writ the sheriff returned that he had taken in execution the interest of the defendant in the land described, in finding No. 4, as also an inquisition and condemnation held February 18, 1870, and thereto attached.

On May 3, 1870, the plaintiff's attorney in that case placed in the sheriff's hands a written notice directed to Charles Streater, that his interest described in said fi. fa., in said land had been levied on by virtue of said writ and condemned, and that application would be made to the court on May 13 at 10 A. M., for a writ of venditioni exponas. This was returned by the sheriff as having been personally served by him May 3, 1870, on Charles Streater by giving him a true copy and making contents known. Pursuant to said notice and continuances by the court of the day for making application, the court on June 27, 1870, made an order permitting the issuing of the venditioni exponas; and on July 1, 1870, the writ of venditioni exponas issued. Hereon the sheriff returned a sale of said real estate August 13, 1870, to Peter O'Donnell for $650, his noncompliance with his bid and a sale on August 20, 1870, to Agib Ricketts for $105, as also his receipt as a lien creditor—the fact being that after the property was struck off to Mr. Ricketts he paid off the judgment and took an assignment of it. Pursuant

to this return the sheriff on April 12, 1871, acknowledged a deed to Mr. Ricketts.

It will be seen from the foregoing that when the Streater-McDaniels' note was given, Charles Streater was under the age of twenty-one, and that he attained his majority three days after the suit was instituted and before the service of the summons. According to his testimony he has no recollection of the service of the summons, the notice of the application for the vend. ex., or the proceedings generally; but on his cross-examination in relation to the giving of the note, etc., it was shown that his memory is at fault in that respect, and the master concludes and so finds that he has forgotten the transactions of the service of the summons and notice, and that they were served upon him as set forth in the sheriff's return.

It has already been stated that the present plaintiff and defendant did not meet from the time of the giving of the note, in 1868, until the year 1878. In February of the latter year the plaintiff was arrested on the charge of having without authority sold a wagon that had been loaned to him. In charge of the officer having the warrant he went to the office of the defendant and applied for money or security with which to settle his difficulty. On that occasion some allusion was made to the fact that plaintiff had not kept his promise, to look after the Rainow note and to call upon the defendant from time to time with relation thereto. It was also suggested by Mr. Ricketts that there should be a settlement between him and the plaintiff, and that he had for some time been trying to see him. The plaintiff promising to come around soon and have a settlement if defendant would help him out of his difficulty—they gave a joint note for some $23 to the party who had caused the plaintiff's arrest, and he was discharged. Afterwards the defendant paid this note but Mr. Streater did not come around. He went west and the parties did not meet again until after this suit was begun.

Owing to the more serious nature of some of the charges in the bill, the legal relationship existing between the parties, and their bearing upon the title set up by the sheriff's deed, the master, after concluding that those charges were not well founded, has deemed it not improper and yet due to the defense to enter into considerable detail as to facts which, although perhaps not all important, have some relevancy to the question of

the right of defendant to purchase at the sheriff's sale and the effect of omission to render any account.

The arguments of the respective counsel, in so far as they relate to the law applicable to the foregoing state of facts, have reference to the following propositions:

1. Did the defendant stand in the relation of trustee for the plaintiff at the time the note was given, and up to the time of the sheriff's sale?

2. If so, did the defendant, in the absence of any positive fraud or bad faith on his part in respect to the indorsing of the note, the recovery of judgment, and the sheriff's sale, acquire a valid title thereby, devested of the former trust for the plaintiff?

3. The plaintiff having failed in his proof of the allegations of positive fraud, can he, in this suit, under the subordinate charges of the bill obtain any relief whatever as to the personalty of the real estate? . . .

(On the first proposition the master decided that it was the duty of the trustee to consult and protect the interest of both the tenant for life and the remainderman. As to the second proposition the master decided that the trustee having volunteered to become indorser, he could not afterwards use the judgment against the *cestui que trust* as the basis of an adverse title to him; and as to the third proposition, he was of opinion that the mere failure to sustain the positive averments of fraud did not entitle the defendant to a dismissal of the bill. The master, therefore, recommended):

1. That defendant be restrained by injunction from conveying to parties other than the plaintiff the interest of the latter in the real estate in question, under the will of Charles Streater, Sr., deceased, and purchased by defendant at the sheriff's sale.

2. That said defendant be ordered to convey to the plaintiff, by good and sufficient deed, the interest acquired by the former at the sheriff's sale aforesaid; and that it be decreed that defendant stand as trustee for the plaintiff, the same as if said sheriff's sale had not been made.

3. That said defendant be ordered to account to the plaintiff for the rents, issues, and profits of one undivided one fourth of said real estate, and from and after the 7th day of January, 1874, the date of the death of his father, William Streater, and for one half of the interest, dividends, and income of the stocks and moneys in defendant's hands as trustee aforesaid, from the

date last aforesaid, and that in taking said account the defendant be allowed credits for the proper proportion of taxes and insurance paid on account of said real estate, as also moneys paid to Brown & Gray and Arnold Bertels, on account of the notes signed by him for plaintiff and for reasonable charges for services as trustee.

Numerous exceptions to this report were filed; and upon the argument upon the same before the court, the defendant moved to amend his answer by adding thereto the defense: "That the claim of complainant is barred by the 6th section of the act of April 22, 1856, forbidding any action to enforce any such trust except within five years from the time such trust accrued."

The court, Rice, P. J., dismissed the exceptions, overruled the motion to amend, and entered a decree as recommended by the master.

Defendant took the appeal, specifying for error that the learned court below erred in the following particulars, to wit: (1) In not dismissing the complainant's bill with costs; (2) in ruling that the appellant could not lawfully purchase appellee's property, at the sheriff's sale thereof upon the judgment of Brown & Gray; (3) in refusing to permit an amendment of the respondent's answer, to meet the case of constructive fraud first presented by the master; and (4) in ruling that appellant was bound to account for the rents arising in great part from the expenditures made by himself and yet was not entitled to credit in any proportion for such expenditures prior to 1874.

*T. H. B. Lewis,* for appellant.—We submit that the only thing for a court of equity to do under such circumstances was to dismiss the bill with costs, and with proper action against both complainant and his counsel. Not only was the sustaining such bill contrary to the general principles of equity jurisprudence, which require him who would have equity to do equity, and to come into court with clean hands; but it is also against the expressly declared course of equity pleading and practice.

In Daniell's Chancery Pleading & Practice, 2d Am. ed. p. 377, 6th Am. ed. p. 326, the rule is thus stated: "Care, however, must be taken in framing the bill that everything which is intended to be proved be stated upon the face of it; otherwise evidence cannot be admitted to prove it."

See also Story, Eq. Pl. § 257; Montesquieu, v. Sandys, 18 Ves. Jr. 302; Crocket v. Lee, 7 Wheat. 523, 9 L. ed. 513; Jackson v. Ashton, 11 Pet. 229, 9 L. ed. 698.

Moreover, the allegations must not only be such as to afford a ground for the relief sought, but they must have been introduced into the bill for the purpose of showing a claim to relief, and not for the mere purpose of corroborating the plaintiff's right to this specific relief prayed. Dan. Ch. Pl. & Pr. 2d Am. ed. 438*; Stevens v. Guppy, 3 Russ, Ch. 185; Story, Eq. Pl. § 42.

And the decisions of this court very clearly and expressly declare the same doctrine. In Delaware & H. Canal Co. v. Pennsylvania Coal Co., 21 Pa. 131, 146, the language is: "The relief to be granted under this prayer must not only be consistent with the specific relief demanded, but must be sustained by the case made by the bill; and the allegations relied upon must not only be such as to afford a ground for the relief sought, but they must appear to have been introduced into the bill for the purpose, and not for the purpose of corroborating the plaintiff's right to the specific relief prayed; otherwise the court would take defendant by surprise, which is contrary to its principles." Kelsey v. Murphy, 26 Pa. 78, 82; Cumberland Valley R. Co.'s Appeal, 62 Pa. 218, 230.

Applying these principles to the present case, it will be seen that the learned court below was clearly in error, and did injustice to appellant in sustaining the bill.

The decisions are clear that if complainant ever had any right to assert a constructive trust under the sheriff's sale, his right has been barred by his laches. Ashhurst's Appeal, 60 Pa. 290; Leaming v. Wise, 73 Pa. 173; Evans's Appeal, 81 Pa. 278; Neely's Appeal, 85 Pa. 387.

The appellant had no control of the sheriff's sale which was made, nor had he any funds of appellee in his hands, and it was wholly uncertain whether he ever would have. Under such circumstances he was under no disability to purchase, even if the relation of trustee and *cestui que trust* had been in actual existence between him and appellee.

This is the doctrine of Fisk v. Sarber, 6 Watts & S. 18, which has ever since been recognized as a sound declaration of the law. Chorpenning's Appeal, 32 Pa. 315, 72 Am. Dec. 789; Meanor

v. Hamilton, 27 Pa. 137; Fisher's Appeal, 34 Pa. 29; Hall's Appeal, 40 Pa. 409; and Young v. Snyder, 3 Grant Cas. 153.

In Lusk's Appeal, 108 Pa. 152, 159, it is declared that the doctrine of Fisk v. Sarber has ever since been the conceded law of this state.

In Parshall's Appeal, 65 Pa. 224, Parshall had made a private sale of the property; and the sheriff's sale was arranged by him simply to carry out this private contract. It was held that the doctrine of Fisk v. Sarber did not apply. Parshall's Appeal does not apply to the present case, for the reason that the facts are totally dissimilar.

When the master filed his report, sustaining the bill on the ground of a constructive trust, this was the first notice on the record that such a claim was made. Inasmuch as the act of April 22, 1856, § 6 (Purdon's Digest, 1064, pl. 14) expressly limits the time within which such trust can be claimed to five years from the time it accrued, a motion was made to permit an amendment of the answer to meet this new phase of the case. This was refused, on the ground that it was too late. We submit that this was error. The act of March 4, 1864, § 2 (Purdon's Digest, 701, pl. 68) expressly provides for the allowance of such amendments whenever justice demands them. And the various decisions declare that these statutes of amendment are to be liberally construed so as to further the ends of justice.

In Miller v. McDonald, 8 W. N. C. 502, the court says: "It is never too late to amend pleadings, so long as no injury is done to the opposite party." This was in a case of an application to amend a bill in equity after the replication had been filed.

In Leach v. Ansbacher, 55 Pa. 85, 90, this court says of an amendment to an answer, allowed after a hearing and the opinion of the court had pointed out wherein the answer was defective, that "it was entirely in the discretion of the court, and will never be denied when justice demands it."

In Darlington's Appeal, 86 Pa. 512, 27 Am. Rep. 726, it is declared that, if need be, a bill in equity may be amended in this court after hearing in the court below and appeal to this court.

*W. P. Ryman,* for appellee.—A trustee has no right to buy a judgment against his *cestui que trust,* and make a profit (Perry, Tr. 428); or bid in the property of a *cestui que trust* at

a sheriff's sale; and, having done so, it must be considered for the benefit of the *cestui que trust*. Id. §§ 194–200; Kerr, Fraud & Mistake, p. 158; Hill, Trustees, * p. 536 and notes; Beeson v. Beeson, 9 Pa. 279; Herr's Estate, 1 Grant, Cas. 272; Cadwalader's Appeal, 64 Pa. 299; Parshall's Appeal, 65 Pa. 224.

The sale in this case was not adverse. Lusk's Appeal, 108 Pa. 159.

A trustee cannot accept a part of a trust and reject the balance. If he accepts any part he must take all. Hill, Trustees, *p. 215.

It is the duty of the trustee to protect both the estates of the tenant for life and the remainderman. Perry, Tr. §§ 539–549.

The defense set up in the motion to amend was not new to appellant, as he admits. It might have been a proper plea, at the time he filed his first plea (Dan. Ch. Pl. & Pr. * p. 639), but he elected not to do so; and the court adopted the well settled doctrine, "that an amendment to an answer will not be permitted for the purpose of enabling the defendant to set up the defense of the statute of limitations if he has not availed himself of the opportunity to improve such a defense in the first instance." 1 Barb. Ch. Pr. ed. 1843, p. 164; Beach v. Fulton Bank, 3 Wend. 573; 1 Dan. Ch. Pl. & Pr. ed. 1879, * p. 781, and note 2. See also Williams v. Snyder, 4 Luzerne Legal Reg. 273; Pancoast v. Reeves, 7 Phila. 383.

OPINION BY MR. JUSTICE STERRETT:

The facts found by the learned master, and approved by the court below, are not only sufficiently charged in the bill, but they are well sustained by the evidence. Their correctness is not even questioned in any of the specifications of error, and hence they must be accepted as verity. It is equally clear that the legal conclusions drawn from the facts thus established are correct; and the court was right in accepting and acting upon them as "an adequate and sound statement of the law," calling for just such a decree as was entered.

It is unnecessary to notice especially either the facts or the plain principles of law applicable thereto. All that can be profitably said, in relation to either, is contained in the master's report, and opinion of the learned president of the common pleas. As has been shown by the latter, there is nothing in the

position that the bill should have been dismissed because certain charges of actual fraud, made therein, were not sustained by the evidence. The findings of constructive fraud, properly charged in the bill, constitute a sufficiently broad and firm foundation on which to rest the decree complained of.

In view of the fiduciary relation existing between appellant and appellee, as to the latter's interest in the land in question, appellant had no right whatever to become the purchaser of that interest, for less than its value, at a sheriff's sale brought about by his own procurement. This of itself was sufficient to bring the case within the rule of public policy on which the learned master's conclusions are based.

There was no error in refusing appellant's motion to amend his answer made on the argument of exceptions to the master's report. It was a matter resting in the sound discretion of the court; and coming, as it did, at that late day, the discretion was wisely exercised by denying the motion.

Nor was there any error in charging appellant with the rents referred to in the fourth specification. The account was stated as favorably to him as he had any right to claim.

An examinataion of the record has failed to disclose any error of which appellant has any just reason to complain.

Decree affirmed and appeal dismissed, at the costs of appellant.