[Civ. No. 18387.   Second Dist., Div. Three.   Jan. 15, 1952.]

UCHIDA INVESTMENT COMPANY (a Corporation), Appellant v. GEORGE J. INAGAKI, Respondent.

Melvin, Faulkner, Sheehan & Wiseman for Appellant.

J. Marion Wright and Owen E. Kupfer for Respondent.

VICKERS, J. pro tem.—Plaintiff, a California corporation, filed suit on July 27, 1949, against the defendant, one of its former officers and directors, for the recovery of secret profits alleged to have been received by him. Each of the first three complaints contained but one count. Demurrers thereto having been sustained plaintiff filed its third amended complaint seeking the same relief as before, but in two counts.

The material allegations of the first seven paragraphs of count I are as follows: The plaintiff was in the nursery business and from 1938 to 1948 defendant was a director and at times an officer; on December 11, 1942, the total issued shares were 999 of which the defendant held 451, his wife 51, and one Kitagawa 497; on that day the Alien Property Custodian of the United States, acting under the authority of the Trading With the Enemy Act, caused the Kitagawa shares to be vested in himself as such custodian because Kitagawa was a national of Japan, an enemy country; ''By his said vesting order said custodian assumed supervision and control over plaintiff corporation''; on November 25, 1947, the Attorney General of the United States, the successor to the custodian caused to be vested in himself all of the stock of defendant and his wife; on July 1, 1943, at a stockholders' meeting, one Bergherm, an employee of the custodian, was elected a director and defendant was re-elected a director of plaintiff; they were the only directors for some time thereafter; on the same day Bergherm became president and defendant secretary-treasurer; prior to July 1, 1943, representatives of the custodian discussed with the defendant the advisability of having the plaintiff enter into a lease of its ''nursery business, to-wit, all its real property, hothouses, equipment and other physical property'' for three years and one month to one Kempton, for $36,600; such a lease was determined upon and on July 1, 1943, a resolution to that effect was adopted by the votes of Bergherm and defendant; on July 22, 1943, the plaintiff and Kempton executed a lease in conformance therewith; Kempton took possession of the property and complied with the provisions of the lease until its expiration date; while the discussions and negotiations were in progress the defendant entered into a secret arrangement with Kempton whereby the defendant

would receive 50 per cent of the net profits from the operation of the nursery business and would be responsible for one half of the rent payable under the lease, but would not be expected to actually participate in the operation of the business; this arrangement was wholly concealed from plaintiff and from Bergherm and the representatives of the custodian; Bergherm would not have voted to authorize the lease nor would have executed it if he had known that defendant was going to share in the profits; defendant did not in good faith exercise his powers as director and officer of plaintiff and should have disclosed his financial interest in the lease to the board of directors; defendant had a special and valuable knowledge of the nursery business conducted by plaintiff and the large profits to be made therefrom, and his conduct was a fraud on plaintiff and he had no right to secretly obtain profits that resulted from the lease.

Paragraph VIII of count I reads as follows: "That said lease was an unjust and unreasonable lease so far as plaintiff corporation was concerned, that said lease was not a just and reasonable lease as to plaintiff corporation at the time it was authorized and approved, in that the rent agreed upon was unjust and unreasonable,. and that a just and reasonable rent under said lease would be and was the sum of $67,091.00 for the term of said lease, or $1,813.26 a month. That defendant Inagaki received by and through the transaction hereinabove set forth secret profits, in the sums hereinafter set forth, which should, under a just and reasonable lease, have been received by plaintiff corporation as a part of the rental for the use and occupancy of the leased premises."

The material allegations of paragraphs IX to XIV inclusive, of count I are as follows: The defendant under the Kempton arrangement received $5,000 for the balance of 1943, $14;138 for 1944, $6,353 for 1945 and $5,000 for 1946 (these total $30,491); all these payments were made secretly and without the consent of plaintiff or of the custodian's representatives; plaintiff did not discover defendant's conduct and fraud until July 31, 1946, or prior to that date have notice or information putting it upon inquiry; there was nothing in plaintiff's records in regard to the arrangement; discovery resulted from an investigation by custodian of a rumor in regard to the matter that first came to custodian's agents on July 29, 1946. Paragraph XV alleges

that plaintiff has received on account of rental of the leased premises only $36,600 and is entitled to recover from defendant $30,491, being the difference between the rent received and "the $67,091 hereinabove mentioned in paragraph VIII."

In count II of the complaint plaintiff incorporates by reference all of count I except paragraphs VIII and XV, and alleges that defendant received from Kempton as his part of the net profits, pursuant to the arrangement, $30,491, that their receipt was an unjust, fraudulent and illegal enrichment of defendant as an officer and director and that plaintiff is entitled to recover them.

Defendant demurred to the third amended complaint on the ground that neither count stated sufficient facts to constitute a cause of action and that if plaintiff had any cause of action the one he has attempted to allege in count I was barred by Code of Civil Procedure, section 339 and in count II by Code of Civil Procedure, section 338, subsection (4). He also included several special grounds of demurrer but in his briefs on appeal argues only the three grounds set out above. The court's ruling was expressed in the simple order "Demurrer is sustained without leave to amend."

It is defendant's contention that count I fails to state a cause of action because the allegations to the effect that the lease was unjust and unreasonable to the plaintiff are conclusions of law and therefore must be disregarded. The allegations to which defendant refers are contained in paragraph VIII, which is set out above. We are of the opinion that those allegations, when considered with other allegations of that count, are sufficient to constitute an allegation of ultimate fact that the lease was not just and reasonable to the corporation. It is true that an allegation such as "said lease was an unjust and unreasonable lease" is a conclusion of law (see *Joyce* v. *Tomasini*, 168 Cal. 234, 237 [142 P. 67], and *Lifton* v. *Harshman*, 80 Cal.App.2d 422, 434 [182 P.2d 222].) But the plaintiff does not content itself with this allegation. It also alleges in that paragraph that a just and reasonable rent under the lease would have been $67,091 (the total of the rent specified and the amount of secret profits alleged to have been received by the defendant), and that if the lease had been just and reasonable the plaintiff would have received that sum. If, as defendant claims, the allegation as to what would have been a just and reasonable rent was arrived at upon an erroneous

theory, it is nevertheless an allegation that a just and reasonable rent would have been an amount substantially in excess of $1,000 per month, which, in our opinion, was sufficient to entitle plaintiff to go to trial on that issue.

Respondent also contends that count II from which paragraph VIII of count I is omitted, does not state facts sufficient to constitute a cause of action because it does not allege that the lease was unjust and unreasonable to the corporation. It is respondent's contention that the old strict rule of accountability of a director or officer to his corporation for secret profits obtained by him in a transaction to which the corporation was a party (see *Western States Life Ins. Co.* v. *Lockwood* (1913), 166 Cal. 185 [135 P. 496]), was so modified by the adoption of Civil Code, section 311 (Corp. Code, § 820). The portion of that section upon which respondent relies reads as follows: ". . . No contract or other transaction between a corporation and . . . any corporation, firm, or association in which one or more of its directors . . . are financially interested, is either void or voidable because such director or directors are present at the meeting of the board of directors or a committee thereof which authorizes or approves the contract or transaction, or because his or their votes are counted for such purpose, if . . . (c) The contract or transaction is just and reasonable as to the corporation at the time it is authorized or approved." Both counts are founded on the same transaction and it appears that the case will be tried upon the allegations of count I. It may well be that this contention of respondent will not be a material issue therein. We therefore consider it unnecessary to express an opinion thereon at this stage of the proceedings.

■ Respondent also contends that under the allegations of the complaint there was no fiduciary relation between him and the corporation. These contentions rest largely upon that portion of paragraph III which after alleging that on December 11, 1942, the custodian caused the 497 shares of stock of Kitagawa to be vested in himself, alleges further that "and by his vesting order said Custodian assumed supervision and control over plaintiff corporation." From this respondent urges that thereafter he exercised his powers as a director as a matter of grace, not as a matter of right, and that his powers were subordinate to those of the Custodian. We seriously doubt that the Alien Property Cus-

todian has power, under the provisions of the Trading with the Enemy Act, to assume supervision or control of a corporation by virtue of having become vested with the shares of a minority stockholder. The allegation in question also may be a conclusion of law as urged by appellant. But be that as it may the respondent was a director and whenever he acted as such, as alleged, he did so in a fiduciary capacity whatever may have been the extent to which the custodian attempted to or did exercise supervision or control of the corporation.

Respondent's contentions that count I is barred by Code of Civil Procedure, section 339, and count II by Code of Civil Procedure, section 338, subsection (4), are not well taken. He contends that count I is an action for rent under an implied contract and therefore barred under the two-year statute of limitations. That count is not susceptible to such a construction. It is clearly an action for the recovery of secret profits fraudulently obtained. Respondent, perforce, concedes that plaintiff's cause of action for secret profits did not accrue and the three year statute of limitations did not commence to run "until [in the language of subsection (4)] discovery of the facts constituting the fraud. . . ." However he contends that the allegations of the complaint are insufficient to show that the plaintiff should not have discovered such facts more than three years before the complaint was filed. With this we cannot agree. The allegations of paragraph XIV of the complaint are in substance as follows: Defendant's conduct and fraud and the receipt of the money by him were not discovered until July 31, 1946; plaintiff did not have notice or information, prior thereto, of circumstances putting it upon inquiry which would lead to knowledge thereof; the records and files of plaintiff contained no information referring to or disclosing the existence of defendant's arrangement with Kempton; neither Bergherm nor his successors knew of its existence until after July 29, 1946; at that time the San Francisco manager of the Custodian Office learned of an unconfirmed rumor that defendant had an interest in the lease and had received part of the profits therefrom; an investigator was then sent to Los Angeles who discovered the facts from Kempton and confirmed them through the defendant and his attorney on August 21, 1946; neither Kempton nor defendant gave any intimation of the existence of such facts to the corporation

or its other officers or directors or to the custodian or his agents at any time prior to the investigation. Under such a state of facts alleged we cannot say as a matter of law that, in the exercise of reasonable diligence, the plaintiff could have made discovery prior to three years before July 27, 1949, the date of filing of the complaint. ■ As was said in *Neet* v. *Holmes*, 25 Cal.2d 447, at page 468 [154 P.2d 854] : "Whether the plaintiffs could have made discovery sooner is not, in view of all the facts alleged, a question to be concluded as a matter of law. It is a question to be resolved by the trial court in appraising the weight and the credibility to be accorded to the evidence and the witnesses on a trial."

■ Respondent urges that in addition to the facts alleged in the third amended complaint we should, in determining the question of discovery, also consider certain facts alleged in the original verified complaint that were omitted from the last complaint. Since no explanation for such omission appears in the last complaint, we agree that they should be considered (see *Williamson* v. *Joyce*, 137 Cal. 151, 153 [69 P. 980], and *Wennerholm* v. *Stanford Univ. Sch. of Medicine*, 20 Cal.2d. 713, 716 [128 P.2d 522, 141 A.L.R. 1358]). ■ The facts so alleged are as follows: On March 31, 1942, the defendant, acting as president of plaintiff, executed a lease of all the corporate assets, for five years, to Kempton and himself as copartners under a fictitious name; on July 1, 1943, Bergherm and the defendant were elected directors and notified Kempton that the lease was void because of the interest of defendant and accepted $5,250 from the partnership in full and complete satisfaction of plaintiff's claim against the partnership and the individuals composing it. Respondent argues that under such a state of facts plaintiff's allegation of concealment and lack of knowledge are not entitled to credence and that appellant was put on notice. With this we cannot agree. As far as appears from the pleadings the 1942 lease to defendant and Kempton was executed without any attempt to conceal that defendant was a party thereto and as soon as Bergherm was elected to the board of directors he and the defendant notified Kempton that the lease was void and required the partnership to pay $5,250. Since it is apparent that the defendant admitted that that lease was wrongful and aided in the correction of the wrong, as a matter of law it can hardly

be said that Bergherm, or anyone connected with the corporation, was required to assume or should have suspected that defendant immediately repeated the wrong in connection with the lease made to Kempton alone.

The judgment is reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

The opinion was modified to read as above printed and a petition for a rehearing was denied February 11, 1952.