[Civ. No. 31898.   Second Dist., Div. One.   June 11, 1968.]

JOHN M. SCHAEFER, Plaintiff, Cross-defendant and Appellant, v. CALIFORNIA-WESTERN STATES LIFE INSURANCE COMPANY, Defendant, Cross-complainant and Respondent.

Alan J. Ludecke for Plaintiff, Cross-defendant and Appellant.

Adams, Duque & Hazeltine, Donald E. Pearson and David R. Carmichael for Defendant, Cross-complainant and Respondent.

FOURT, J.—John M. Schaefer appeals the determination of the trial court that he did not properly receive a permanent waiver of life insurance policy premiums and that the issuer, California-Western States Life Insurance Company (hereinafter sometimes referred to as Cal-Western) is entitled to reformation of the policy on grounds of mutual mistake.

Appellant contends that the incontestability clause of the policy precludes Cal-Western from obtaining reformation on the ground of mutual mistake more than two years following the issuance of the policy; that the action for reformation is barred by the statute of limitations; and that the facts disclose only Cal-Western's unilateral mistake which is not sufficient grounds for reformation. These contentions are without merit.

The evidence discloses that in 1952 appellant's father, who had then been an agent for Cal-Western for almost 20 years, applied for and was issued a $5,000 "Junior Estate Builder" policy on the life of appellant, then about 14 years old. The policy provided for a $5,000 payment if the insured died prior to the policy anniversary date nearest his 21st birthday. If the insured survived that date, the insurance coverage increased to $25,000 and under the terms of the policy, control and ownership thereof passed from the payor and purchaser to the insured, appellant in the instant case.

The elder Mr. Schaefer, who was one of Cal-Western's most able and experienced sales agents, was thoroughly familiar with the policies offered by the company and with the peculiar advantages of the policy he purchased for his son. In 1953 he obtained in connection with this policy, an additional benefit which provided that if he died before the policy anniversary nearest his son's 25th birthday, premiums would be waived until that date. This benefit, known as "payor insurance" is in fact insurance on the father's life because it would provide benefits insuring that the policy would remain in force without payment of premiums in the event of the father's death and until the insured had the opportunity to complete his education, as occurred in this instance.

Cal-Western issued to each of its sales agents a rate book for use in soliciting business. Appellant's father possessed such a rate book from which he could obtain information and rates relating to the various types of insurance policies available from the company. These rate books Cal-Western kept current by issuing periodically, dated replacement pages to be inserted in the loose leaf books. The payor insurance or

"Payor Death Benefit" as it is called in the rate book, is explained on page 347A thereof. It is there provided, in the case of the Junior Estate Builder policy, that the company will, for an extra premium, issue payor insurance to waive future premiums falling due prior to the policy anniversary nearest the insured's age 25, at which time that benefit shall cease.[1] Except as there set forth, no payor insurance was offered by Cal-Western in connection with the Junior Estate Builder policy of life insurance.

Respondent on January 24, 1953, by a rider attached to the existing policy of insurance on appellant's life, issued payor insurance to appellant's father for an additional annual premium of $104.56. Through a clerical error on the part of Cal-Western, however, a "Form 494" rider which purported to waive all premiums due under the policy after the father's death rather than merely those falling due before the policy anniversary date nearest appellant's age 25, was stapled to the Schaefer policy. The "Form 494" rider provides a type of payor insurance intended only for endowment type policies which would be fully paid in any event by the insured's reaching age 21, or 20-pay life insurance policies issued only to juveniles up to the age of 14 and fully paid up in 20 years. The "Form 494" rider, which in this case would waive all future premiums due and otherwise payable until the policy anniversary date nearest the insured's 65th birthday, at which time all premiums cease, has never been approved for attachment to Junior Estate Builder policies.

Appellant's father died in 1960 and shortly thereafter appellant so notified Mr. Adam Kupiec, managing agent of respondent's San Diego office. Although appellant claims that he visited the office and discussed specifically the payor death benefit with Mr. Kupiec at that time, Mr. Kupiec testified that

---

[1] "For an extra premium, the Company will include Payor Insurance whereby the Company will waive future premiums falling due prior to the policy anniversary nearest the insured's age 25 as follows:

"a. If the payor shall die before such anniversary, or

"b. If the payor shall either die or become totally disabled before such anniversary and before age 60 (age 55 for female payor) as provided in the policy.

"If the payor be a woman, the disability benefit may be included, at two times the rates charged for male risks, only under the following conditions:

"a. Age limits at issue, 21 to 50 years;

"b. The applicant must be a wage earner, leaving home daily for work for regular compensation upon which she is dependent for support.

"Premiums for the payor insurance benefit cease at the policy anniversary nearest the insured's age 25."

the provision was not then drawn to his attention but the policy was, instead, temporarily left with his secretary. Cal-Western by letter dated September 13, 1960, notified appellant that premiums would be waived on the policy to and including September 24, 1962, and when appellant made no response or objection the company proceeded in accordance with its understanding. By letter of September 26, 1962, the company notified appellant that premiums on the policy would become due and payable beginning September 24, 1963, and appellant then responded by letter dated April 25, 1963, indicating that he interpreted the policy provisions in a different manner. On May 10, 1963, respondent by letter acknowledged its error and requested that the insurance policy be returned to its office for correction. Appellant declined to return the policy, paid the premiums as they fell due thereafter under protest, and on November 20, 1963, commenced the present action for declaratory relief seeking to have all premiums due under his policy from and after the date of his father's death waived permanently.

When appellant instituted this action, the company cross-complained seeking reformation of the insurance contract to conform to the true intent and agreement of the parties as set forth in the company rate book. The trial court found[2] that the Form 494 rider did not embody the real and actual agreement of the parties, did not fully and truly express the intention of the parties, and was not in accord with the type of payor death benefit offered by Cal-Western in connection with Junior Estate Builder policies, but that instead the parties intended that the rider providing the waiver of premiums until the anniversary date nearest appellant's 25th birthday be attained. The trial court further found from the evidence that neither the company, nor any of its agents, had any knowledge of the incorrectly attached rider until the company discovered the mutual mistake of fact when it received appellant's letter of April 25, 1963.

Appellant contends that the company was precluded from asserting the grounds of mistake to obtain reformation after

[2]Although the contents of the Clerk's Transcript designated on appeal included neither the judgment nor the findings of fact and conclusions of law entered by the trial court, neither party disputes the nature, substance, and entry of the judgment. The respondent has included as an appendix to his brief the "Findings of Fact and Conclusions of Law" purportedly dated September 14, 1966, and signed by Edward J. Olstyn, Judge pro tem., which, in the absence of any objection from appellant, we accept as correct.

two years from the date of issuance of the policy according to the policy's incontestability clause.[3] (*Richardson* v. *Travelers Ins. Co.* 171 F.2d 699 [7 A.L.R.2d 501].) The case relied upon by appellant, however, fails to sustain his contention and its application in California has since been limited. ■ "The denial of liability under a policy by reason of fraud or misrepresentation in its procurement is the 'contest' which is governed by the incontestable clause. [Citations.] . . ." (*New York Life Ins. Co.* v. *Hollender*, 38 Cal.2d 73, 78 [237 P.2d 510].) ■ The federal courts in subsequent decisions relying upon California law (*Flax* v. *Prudential Life Ins. Co. of America*, 148 F.Supp. 720; *Mutual Life Ins. Co. of New York* v. *Simon*, 151 F.Supp. 408) have concluded that reformation for mutual mistake based upon a scrivener's error is not barred by the incontestability clause in an insurance policy. Any other decision would, indeed, bestow upon appellant a windfall favoring him above other insureds holding similar policies. "Protection of the policyholder does not require that reformation for mistake be denied, since he will receive all the benefits for which premiums have been paid. Furthermore, allowing benefits incommensurate with the premiums paid is contrary to the well recognized policy, often enforced by statute, against discrimination among insurance purchasers of the same class." (62 Harv.L.Rev. 890, 891.) No ambiguity appearing in the subject policy, appellant is not assisted by the rule he asserts that insurance policies should be strictly construed against the insurer. (*O'Doan* v. *Insurance Co. of North America*, 243 Cal.App.2d 71, 77 [52 Cal.Rptr. 184].)

Appellant further contends that respondent's action for reformation was barred by the statute of limitations. ■ The cause of action based upon mistake or fraud, however, is deemed to accrue only upon discovery, by the aggrieved party, of the facts constituting such mistake (Code Civ. Proc. § 338, subd. 4) and the time when discovery occurred is a question of fact to be determined by the trier of the facts. (*Uchida Investment Co.* v. *Inagaki*, 108 Cal.App.2d 647, 654 [239 P.2d 644].) ■ Viewing the evidence, as we are required to do upon appeal, in the light most favorable to respondent and

---

[3] "This policy shall be incontestable, except as to any additional accident or permanent total disability benefits which may be issued in connection herewith, after it shall have been in force, during the lifetime of the insured, for two years from its date of issue or from the date of any reinstatement hereof, whichever is the later date, if all premiums shall have been duly paid."

resolving all conflicts in favor of the findings which support the judgment (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; *Overton* v. *Vita-Food Corp.*, 94 Cal. App.2d 367, 370 [210 P.2d 757]) we find ample evidence to sustain the trial court's finding that the company did not discover their clerical mistake until April 25, 1963, well within the statutory period.

■ The same principle controls our determination of appellant's final contention that the company's unilateral mistake does not constitute proper grounds for granting reformation which we construe as an attack upon the propriety of the finding that there was a mutual mistake participated in by Cal-Western and appellant's father. It is undisputed that appellant's father was familiar with the Junior Estate Builder policies and the riders providing payor insurance appropriate to such policies. Assuming, as we must, that when he received the policy with the additional rider requested, appellant's father either did not read it or was mistaken as to its contents, he shared his mistake with that of the company. ■ "Although the party seeking revision of the contract must present clear and convincing proof, the intention of the parties is a factual matter to be determined by the trial court, and our review of the judgment is limited to the question whether it is supported by substantial evidence. [Citation.]" (*Campbell* v. *Republic Indemnity Co.*, 149 Cal.App.2d 476, 480 [308 P.2d 425].) ■ The findings of the trial court are supported by substantial evidence, and reformation supplies the appropriate means to render the contract consistent with the understanding of the parties. Moreover, reformation will assure that neither party incurs a detriment: the company does not thus avoid its liability to perform under the policy, and appellant receives the fair benefit which his father intended according to his understanding of the rate book and insurance policies.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.