[Civ. No. 22065.   Second Dist., Div. Three.   May 27, 1957.]

HARRY S. KAISER, Appellant, v. ROBERT EASTON et al., Respondents.

Joseph W. Fairfield, Ethelyn F. Black and Howard Marshall for Appellant.

Jay J. Stein for Respondents.

SHINN, P. J.—In this action the plaintiff Kaiser, a stockholder, who owns 50 shares of preferred stock of Harbor Bedding Products Corporation, upon which he is entitled to receive and has received a yearly dividend of $50, is suing the corporation, Robert Easton, Elsa Easton and Morris Joelson, who are its officers and directors, for $5,000 general damages, $10,000 punitive damages, an accounting of corporate funds, removal from office of the defendants, the appointment of a receiver and other equitable relief. Defendants are the owners of all the common stock and 50 shares of the 100 shares of preferred stock that have been issued. The principal complaint on the appeal is that plaintiff was required to furnish security for the expenses of the defendants in defending the action in the trial court and upon the present appeal prosecuted by plaintiff. If there is one fact disclosed by the record which stands out above all others, it is that this action serves as an example of the class of litigation that led to legislation under which suing stockholders may be required to indemnify successful defendants for their expenses in defending themselves.

The present action was instituted by Harry S. Kaiser, in his representative capacity of stockholder of Harbor Bedding Products Corporation. The defendants answered and, after a trial, findings and judgment were in their favor. Before the trial, on application of defendants, plaintiff was ordered to and did furnish security in the amount of $2,500 pursuant to section 834 of the Corporations Code. Judgment was entered December 16, 1955. Plaintiff gave notice of appeal from the judgment on January 18, 1956. On February 17, 1956, defendants gave notice of a motion for an order increasing the amount of security to be furnished by plaintiff in the sum of $2,250 and the court ordered that additional security be provided in that amount. It was provided by the judgment that defendants should have recourse to the undertaking of Hartford Accident and Indemnity Company in the amount of $2,000 as reasonable fees for the services of defendants' attorney, $275 as reasonable charges of an accountant for services rendered to defendants and $81.17 as defendants' costs. The order requiring the furnishing of additional security provided that defendants should have recourse thereto in the

amount of $2,250 "for such reasonable attorney fees as may hereafter be incurred by movants herein," which would be expenses on the appeal. Plaintiff did not appeal from the original order requiring the posting of security but he appeals from the order for additional security as well as from the judgment.

The articles of the corporation provide for four directors. Two of the original directors resigned and after certain changes the board consisted of Morris Joelson and the defendants Easton, husband and wife. The fourth position was not filled. In June, 1947, Robert Easton acquired 100 shares of preferred stock and 50 shares of common at the par value of $100 per share; in November, 1947, he acquired 25 shares of common for $2,500 and in August, 1948, he purchased 25 additional shares of common for $2,500. In 1947 plaintiff acquired 50 shares of Easton's 100 shares of preferred. In 1947 and 1948 one Guy Joseph purchased 200 shares of common stock at $100 per share and these were purchased from him by Easton for the sum of $20,000. In November, 1955, the by-laws were amended to provide for only three directors. Robert is president and treasurer, Elsa, secretary, and Joelson, vice-president.

The material allegations of the complaint were the following: Defendants claim to have loaned the corporation $24,000 and have been paying themselves sums on account thereof although, in fact, they made no loans to the corporation; defendants have paid themselves bonuses each year since 1947 although the corporation has been insolvent; they have created "artificial entertainment and automobile expenses for the defendants Robert Easton and Morris Joelson"; they have appropriated corporate sums to themselves. The court found all these allegations to be untrue except the allegation respecting the payment of bonuses, as to which the court found that bonuses were paid from profits to Easton and other employees in the years 1947 and 1948. It was found that at the time of the commencement of the action there were outstanding 400 shares of common stock of which Easton owned 350, and Joelson 50; also 100 shares of preferred stock of which Easton and plaintiff each owned 50 shares.

Upon the appeal from the judgment plaintiff questions the sufficiency of the evidence to support the findings. His briefs are replete with vague accusations of malfeasance. The general tenor of his argument is expressed as follows: "The crux of plaintiff's complaint is defendants' domination and control of the corporation. The gravamen of plaintiff's action is the

utter and total disregard by the defendants of their fiduciary obligations. To argue, as the respondents now do, that the defendants may breach their fiduciary duty and be guilty of misfeasance, and that the plaintiff cannot complain therefor because it has not been directly injured is specious reasoning. (*Sutter* v. *General Petroleum Co.*, 28 Cal.2d 525 [170 P.2d 898, 167 A.L.R. 271].) No one can take advantage of his own wrong (Civil Code, § 3517). Plaintiff does not have to stand idly by and await actual injury by the misconduct of the defendants before he may seek the aid of a court of equity.'' Plaintiff quotes from the cases general definitions of the duties of directors and officers as fiduciaries. His briefs call attention to no evidence that the defendants have misappropriated or wasted any funds of the company or have been guilty of any dishonest acts.

While not denying that Mrs. Easton and Joelson made loans to the corporation in large amounts and that the company used the money, plaintiff complains only that no formal action was taken by the board for borrowing the money. The undisputed evidence was that Mrs. Easton loaned the company about $20,000 and that Joelson loaned it about $16,000 over a period of years. Payments were made on account until, at the time of trial, the balance owing to Mrs. Easton amounted to $10,000 and the balance due Joelson, $3,500. No interest was charged on the loans although at one time Mrs. Easton was paid $63.20 and Joelson was paid $46.37 as interest. ■ It is elementary that liability for money loaned or services rendered to a corporation for which it could legally contract, cannot be repudiated for informality of corporate action authorizing the same. (*Main* v. *Casserly*, 67 Cal. 127 [7 P. 426]; *Woods Lbr. Co.* v. *Moore*, 183 Cal. 497, 505 [191 P. 905, 11 A.L.R. 549]; *Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 509, 514 [185 P. 388]; *Kelly* v. *Ning Yung Ben. Assn.*, 2 Cal.App. 460, 466 [84 P. 321].) ■ Obligations of a closed corporation within the usual course of its business, authorized informally by its directors and stockholders who have usually conducted its affairs are binding upon the corporation. (*Brainard* v. *De La Montanya*, 18 Cal.2d 502, 511 [116 P.2d 66].)

Except for the years 1949 and 1950 the corporation made money each year. Easton's salary was fixed at various times at either $100 or $150 per week. During 1947 and 1948 there was accumulated unpaid salary of $1,400. Thereafter he received $100 per week. Commencing in the year 1952 Mrs. Easton devoted approximately 50 hours per week to the busi-

ness and was paid $50 per week. The preferred stock was entitled to dividends at the rate of 1 per cent per year which have been paid but no dividends have been paid on the common stock. Except for the year 1950 dividends on the preferred stock were paid from earned surplus. If there should be default in the payment of dividends on the preferred stock for two successive years, the voting power went to the holders of the preferred; otherwise they had no voting rights. In 1950 Easton contributed $100 to the corporation as ''paid in surplus.'' It was disbursed $50 to plaintiff and $50 to Easton. Plaintiff argues that this was a device to prevent his exercising voting rights under which, at that time he could have elected two of the four board members. The court was of the opinion that this irregularity in 1950 deprived the plaintiff of no right; that there was no default in dividends for two years and stated: '' 'We have gone over and over this, and I don't see even if this payment was made erroneously, what possible effect it could have on your case? . . . So assuming that all this is true, what difference does it make? I don't see why you are harping on it.' '' We take the same view of the incident.

Although the payment of $850 to Easton in 1947 and the payment of $550 to him in 1948 were referred to by the parties as bonuses, it appears that these sums represented unpaid wages for those years and that the payments were not improper. Plaintiff says that a transfer of a certain credit by Easton to Joelson ''is susceptible to a conclusion of fraud.'' The remaining discussion of the facts consists of similar vague and unsupported assertions of disregard of fiduciary obligations, disregard of the rights of plaintiff, and the operation of the business by defendants as if it were their own business. The answer to all of them lies in the fact that the trial court was convinced that the defendants were diligent and faithful in their conduct of the corporation's business and that they had been guilty of no wrongful practice. Easton has $35,000 and Joelson has $5,000 invested in the corporation. The Eastons ran the business; their salaries were modest, their profits lay in the success of the corporation, and we agree with the trial court that plaintiff produced no evidence to substantiate any of the charges of misconduct. Under these circumstances the corporation had no claim against the defendants, or either of them, for breach of duty toward the corporation and, consequently, a stockholder could have none. It is not conceivable that any court would have removed the directors from office and barred them from holding office in

the future which plaintiff, even now, contends should have been done.

Defendants urge that the order requiring plaintiff to post security prior to trial was an appealable order, that no appeal was taken from it and that it must be deemed a valid order, not subject to review. █ Plaintiff replies that the order was void for the reason that in granting the application for the posting of security the court made no findings and that the void order was not appealable. The order was not void. █ It is immaterial whether it was an appealable order. The judgment is subject to review, and this includes the provision giving defendants resort to the security.

There are two sections of the Corporations Code that relate to the furnishing of security for the protection of defendants in stockholders suits, namely, sections 830 and 834. Section 830 governs in those cases in which a director, officer or employee of a corporation is sued for his acts or failure to act in accordance with his duties, and in which he seeks to fasten upon the corporation liability for his expenses in defending the action. The court is authorized to assess the expenses against the corporation if the individual has been successful and the court finds that he merits indemnification. Defendants sought no such relief. It would not be incorrect to say that they are, in reality, the corporation.

█ The purpose of the remedy provided by section 834, invoked by defendants, is quite different. It is to impose conditions upon the prosecution of unfounded litigation by disgruntled stockholders against corporate directors, and others. The plaintiff may be required to provide indemnity in favor of the individual defendants and, in proper cases, indemnity as a protection against liability that might be assessed against the corporation under section 830. The indemnity sought by defendants and furnished by plaintiff was for the protection of the individual defendants. Section 834 was applicable; section 830 was not. Under either section the right to indemnification is determined after the action has been tried, and it is ordered only in case the court determines that those seeking indemnity have been successful in the litigation and are fairly and equitably entitled to have recourse against the surety. One of the findings was that defendants merited recourse in the amounts stated in the judgment. The original order requiring the posting of security, and the judgment awarding defendants recourse thereto were in all respects regular and proper. █ Although there was no segregation

in the judgment among the defendants of their expenses, they were represented by the same counsel and it was to be presumed that they shared equally in all the expenses paid and incurred.

The final point urged by plaintiff is that the court was without jurisdiction to order the posting of additional security after plaintiff had taken an appeal from the judgment. We cannot agree that the court lost jurisdiction by reason of the appeal.

The application of defendants for security was timely. Thereafter, as provided in section 834, the court ''from time to time'' could order the security increased or decreased upon a showing that it was inadequate or excessive. In their first application for security the defendants limited their request to $2,750, expressly basing their estimate of expenses upon the assumption that the action would be tried and that the expenses would be incurred in the trial. They excluded from their request any estimate with respect to any attorneys' fees or costs in the event of an appeal. In their application for additional security they set forth that the amounts fixed by the judgment as expenses totaled $2,356.17. It was shown that the attorney who had represented defendants at the trial would represent them on the appeal, and that he had rendered services to them subsequent to the judgment. The request was for additional security in the sum of $2,250 and, as we have stated, the order was for that amount as estimated attorney's fees.

The purpose of the remedy afforded by section 834, of course, is to provide full indemnity for expenses of the defense, incurred throughout the litigation, and no distinction is stated between the expenses incident to the trial and those incurred in defending the judgment on appeal. The security of $2,500 became inadequate when the court fixed the amount of the trial expenses at $2,356.17. The court, no doubt, could have ordered that additional security be posted in the event of an appeal if application had been made therefor prior to entry of judgment. The authority for such an order follows from the right of the defendants to full indemnification and the fact that section 834 does not purport to limit it to the trial expense. The fact that no application was made at that time did not divest the court of jurisdiction to entertain an application after judgment had been entered and an appeal taken. It is the general rule that the taking of an appeal divests the trial court of jurisdiction to

take any action that affects the judgment. It must stand as it is entered as an adjudication of the issues that have been tried and the rights that have been determined, except as to subsequent proceedings authorized by the code. But jurisdiction is not lost to act in collateral matters in which the rights of the parties require action, if they do not affect the judgment. "The law is established in California that, notwithstanding the perfection of an appeal and stay of all proceedings upon the order appealed from and matters embraced therein, the superior court may proceed upon any other matter embraced within the action and not affected by the order appealed from." (*Hallam Cooley Agency* v. *Superior Court,* 30 Cal.App.2d 20 [85 P.2d 457].) Jurisdiction was acquired upon the making of the first order; it was subject to modification, or a new order could be made, "from time to time."

There is, of course, no reason for an implication that "from time to time" means during the pendency of the action in the trial court. It means rather "any time during the pendency of the litigation when necessity for another order arises." Necessity did not arise in the present case until an appeal had been taken. That was the appropriate time for an application for additional security.

There was no abuse of discretion in ordering security in the amount of $2,500 as the estimated expense of defending the action in the trial court. The complaint itself suggests the futility of the litigation. Plaintiff made a bad investment. He purchased preferred stock for $5,000 which can return him a dividend of only $50 per year. If he was imposed upon in that transaction nothing could be accomplished in the present litigation that would better his position. For these reasons, and the additional reason that the appeal from the judgment is without merit it was not abuse of discretion to order security in the sum of $2,250 as the estimated expense of defending the judgment on appeal.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.

A petition for a rehearing was denied June 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1957.