[Civ. No. 21701. First Dist., Div. One. Nov. 2, 1965.]

ATHALIE I. BURT et al., Plaintiffs and Appellants, v. THE IRVINE COMPANY et al., Defendants and Respondents.

Loeb & Loeb, Alden G. Pearce, Howard I. Friedman and C. Ray Robinson for Plaintiffs and Appellants.

McCutchen, Doyle, Brown, Trautman & Enersen, Morris M. Doyle, Howard J. Privett, Newlin, Tackabury & Johnston and David H. Massey for Defendants and Respondents.

SIMS, J. — Plaintiffs have appealed from a judgment entered for the defendants after the court sustained the respective demurrers of each of two groups of defendants without leave to amend, and also from an order requiring plaintiffs to furnish security pursuant to the provisions of section 834 of the Corporations Code.

### Procedural Background

A review of the proceedings held before the lower court facilitates understanding of the legal issues raised by the appeal and the factual matters, both alleged and evidentiary, bearing thereon. On July 31, 1962 plaintiffs filed their complaint, in two counts. The suit is concededly a stockholders' derivative action for the alleged benefit of defendant, The Irvine Company, a corporation (hereinafter "the Company"), and joins as defendants The James Irvine Foundation, a nonprofit charitable corporation (hereinafter "the Foundation"), certain named directors and officers of the Company, and business entities in which an officer of the Company allegedly has an interest. Plaintiffs attack a real estate transaction entered into in 1959 and concluded early in 1960, in which the Company exchanged land suitable for residential development in Orange County for agricultural land in Imperial County. They seek to recover the difference between the alleged fair market value of the land conveyed and the value received by the Company in exchange therefor; and, in addition, the alleged loss to the Company from the exchange, rather than the retention for leasing, of 29 acres

allegedly improperly transferred and conveyed, alleged profits made by an officer of the Company in the development of a portion of the property received by him and the business entities in which he is interested, and their costs of suit and attorneys' fees.

On October 30, 1962, the time therefor having been properly extended, the Foundation and the named individual defendants other than Long, who is the alleged recipient of an interest in the property conveyed by the Company, filed a demurrer and memorandum of points and authorities setting up failure of the complaint to state facts sufficient to constitute a cause of action, and the bar of the two-year limitation of subdivision 1 of section 339 of the Code of Civil Procedure. Contemporaneously the Company and related individual defendants filed a notice of motion to require plaintiffs to furnish security under section 834 of the Corporations Code on the ground that there is no reasonable possibility that the prosecution of the causes of action alleged in the complaint will benefit the Company, and on the additional ground as to the defendants Gerdes and Honer that they did not participate in any capacity in the transactions complained of in the complaint. This notice of motion was accompanied by the declarations of four of the six appearing defendants and of the defendant Long, of Fant, an employee of the Company, and of the attorney for the moving parties.

On the same day the defendant Long, and the business entities in which he is allegedly interested, took similar action. By their demurrer they raised the same issues as their codefendants and specially asserted that several causes of action had been improperly united. Long also filed a notice of motion to require plaintiffs to furnish security on his own behalf on the ground first asserted by his codefendants, which was supported by the declaration of his attorney and all of the declarations hereinabove noted, except that of the attorney for the codefendants.

Thereafter, on March 7, 1963, each of the plaintiffs filed her declaration in opposition to the pending motion. In addition there were filed on plaintiffs' behalf declarations of the former secretary and of the former assistant secretary of the Company, of two appraisers, and of two individuals, each of whom represented a developer who had been interested in the acquisition of the Orange County property.

Despite the provisions of subdivision (c) of section 834 of the Corporations Code, which grant a stay of proceedings

until 10 days after a motion requiring a party to furnish security is disposed of, both the demurrers and the motions came on regularly for hearing on March 11, 12 and 13, 1963. At that time, by agreement of counsel, the depositions of plaintiff Burt, theretofore taken on behalf of defendants, and of defendant McFadden, and of employee Fant, previously taken on behalf of plaintiffs, were made part of the record on the motions for security.

Following the hearing defendants filed supplements to the declarations of Long, Fant, and defendant Wheeler, and a declaration of the appraiser who had appraised the Orange County property for the Company in 1959. Finally, at the suggestion of the court, albeit reluctantly, the plaintiffs lodged with the court a copy of a proposed amended complaint.

After consideration of this voluminous record, which includes not only the documents to which reference has been made, but also numerous exhibits attached to the complaint and to the various declarations, the court rendered its decision sustaining without leave to amend, the demurrer of the Foundation and related defendants on both of the grounds asserted, and that of the defendants Long and associated defendants on the ground that the complaint failed to state a cause of action. The motion for security was denied without prejudice. A formal order denying motions for security and a judgment on demurrer were thereupon signed and filed, and notice thereof was given to plaintiffs.

On June 5, 1963, plaintiffs filed their notice of appeal from the aforementioned judgment. Thereafter on June 6, 1963, Long, on the one hand, and the Company and related defendants on the other, each filed a notice of appeal from the order denying the motions for security. By appropriate notices and by stipulation all of the matters before the trial court, including a transcript of the hearings before it, were incorporated in the record for each of the appeals.

On August 13, 1963, each of the appealing defendants, pursuant to the provisions of rule 19(a), California Rules of Court, abandoned the appeal from the order denying the motions for security. They jointly filed their notice of intention to renew motions to require plaintiffs to furnish security under Corporations Code, section 834, and the declarations of their respective attorneys in support thereof. The notice of motions indicates that their renewal is predicated upon the same grounds as originally asserted, and is based upon substantially all of the declarations and other matters proffered

by the defendants in support of their prior motions, and the new declarations, which reflect the pendency of plaintiffs' appeal. Following hearing the court made and filed its order requiring plaintiffs to deposit security in the sum of $15,000 for the reasonable expenses and attorneys' fees of the defendant Company, six directors and the defendant Long. Plaintiffs appealed from this order. By appropriate designations and stipulations the record on this appeal includes all that was adduced before augmented by the subsequent proceedings, including the order which is attacked.

The dismissals of the appeals from the order denying the motions for security dispose of the question of whether such an order is an appealable order (see *Efron* v. *Kalmanovitz* (1960) 185 Cal.App.2d 149 [8 Cal.Rptr. 107] and *Bailey* v. *Fosca Oil Co.* (1963) 216 Cal.App.2d 813, 815 [31 Cal.Rptr. 380]). It is unnecessary to determine whether an appeal from an order granting such a motion after judgment (see *Kaiser* v. *Easton* (1957) 151 Cal.App.2d 307, 314-315 [311 P.2d 108]) lies because it is a ''special order made after final judgment'' (Code Civ. Proc., § 963, subd. 2), or, because it is a final order in a collateral proceeding directing the performance of an act, to wit, the deposit of security, by appellants. (See 3 Witkin, Cal. Procedure (1954) Appeal, § 11, pp. 2152-5153; *Efron* v. *Kalmanovitz, supra,* 185 Cal.App.2d 149, 154-155.) Any suggestion in the case last cited that an order granting security can only be reviewed following dismissal of the action for failure to furnish the security ordered (185 Cal.App.2d at pp. 156-157) is questionable in view of the fact that two of the three judges who participated in *Efron,* without comment, entertained and determined an appeal, taken before the expiration of the period granted within which to post security, from an order for security entered prior to judgment (see *Marble* v. *Latchford Glass Co.* (1962) 205 Cal.App.2d 171, 175 [22 Cal.Rptr. 789]). More particularly, in these proceedings, on prior motion of respondents for a stay of proceedings on the appeal from the judgment pending determination of the appeal from the order requiring security, it was recognized that the latter appeal was properly before the court and that the motion for security was technically undisposed of until resolution of the appeal.[1]

---

[1]The appellants, by posting a bond to furnish the security required by the latter order, were relieved of the stay which might otherwise apply to the appeal from the judgment pursuant to the provisions of

## Issues Involved

Appellants contend that the lower court abused its discretion in failing to permit them to amend their complaint. In support of this contention issue has been joined on the following matters which the respective defendants, jointly in some cases and severally in others, have raised in support of the lower court's ruling: (1) a determination of the applicable statute of limitations in respect of the Foundation and related directors on the one hand, and in respect of Long and associated defendants on the other; (2) whether or not the applicable period of limitation, if otherwise a bar, has been tolled; (3) whether or not action against Long et al. is barred by laches; (4) whether the alleged acts of the defendants constitute constructive fraud, negligence, or some other form of misfeasance, or merely a legitimate exercise of business judgment; (5) the nature of the liability, if any, of the defendant Foundation as a majority stockholder; (6) whether or not there was a failure to disclose or wrongful disclosure of the interest to be received by Long in the property conveyed by the Company; and (7) whether or not the appellants are barred from asserting any claim by reason of ratification of the transaction by themselves or by the Company through the approval of independent directors.

Appellants' position on the second appeal involves establishing that the court erred in finding ''that there is no reasonable possibility that the prosecution of causes of action alleged in the complaint would be successful or would benefit defendant corporation . . . or its security holders.'' If the action of the lower court in sustaining the demurrers without leave to amend and in entering judgment for defendants is upheld, the propriety of the foregoing finding is established. On the other hand, if the lower court abused its discretion in refusing to permit amendment of the complaint it does not necessarily follow that it also abused its discretion in granting the motions for security. The latter may involve the weighing of affirmative defenses, or estimates of the possible resolution of disputed questions of fact which would be material on the motion, despite the filing of a complaint stating facts sufficient to constitute a cause of action.

## The Facts

The juxtaposition of these two controversies makes it difficult to disassociate the facts alleged (in respect of the com-

subdivision (c) of section 834 of the Corporations Code, and both appeals have been prosecuted together before this court.

plaint) and the facts brought out in evidence (in respect of the motions for security). The parties agree that the latter bear on appellants' right to amend their complaint although they differ in the conclusions to be drawn from an examination of those facts. Self-discipline must be exercised to preclude consideration of the weight of the evidence as on a trial on the merits, or review as of an appeal from a summary judgment. In the interests of clarity the facts are set forth below as they appear from the allegations of the complaint and the proposed amended complaint. Where they are disputed or qualified in the evidence presented to the lower court note is made thereof. Where no comment appears it may be assumed that the allegations of the complaint are not qualified in any substantial or material particular by the allegations of the amended complaint or the evidence.

It was originally alleged that The Irvine Company was incorporated under the laws of the State of West Virginia and was doing business in this state with its principal place of business in Orange County, where it owned approximately 93,000 acres; and that it "is principally engaged in the development, sale and leasing of said property for residential, industrial, commercial, agricultural and related purposes." By the proposed amended complaint it was further alleged that the lands in Orange County are a portion of total holdings of approximately 205,000 acres located in Orange and Imperial Counties in California, and in Montana; that the 93,000 acres have a value in excess of $100,000,000; that the Company was founded in 1894 by James Irvine, Jr., the grandfather of plaintiff Burt, who acted as president thereof until his death in 1947, when he was succeeded by his son Myford Irvine who served until his death in January 1959; that the issued and outstanding shares of stock in the Company are owned by fewer than 12 shareholders, many of whom are members of the Irvine family; and that on the basis of the (then) most recent sale in August 1962 the shares of stock in the Company had a value of $109,000 per share.

Appellant Burt and appellant Clarke, as trustee under a declaration of trust, each is the registered owner of 100 shares of the stock of the Company. The total of their holdings represents slightly in excess of 20 per cent of the total authorized, issued and outstanding stock of the Company. Appellant Burt is the daughter of appellant Clarke and succeeded her as a director of the Company in June 1957. Since January 1959 she has been and at the time the proposed

amended complaint was lodged with the court was the only director who owned stock in the Company.

It is alleged that appellant Burt on frequent occasions has been in disagreement with the named directors and their predecessors with reference to the policies, operation and management of the Company in all aspects; that she has asserted that certain of their actions and policies constituted breaches of fiduciary duties which they owed to the Company and its stockholders; that the disagreements have resulted in extreme antagonism toward appellant Burt on the part of said directors; and that they have acted with extreme hostility to her, have endeavored to deprive her of access to sources of information, and have sought to prevent her from recording her dissent to their actions.

The James Irvine Foundation was created in 1937 by James Irvine, Jr., as a nonprofit charitable corporation under the laws of the State of California, with its principal place of business in San Francisco. Its principal asset is 510 shares or over 51 per cent of the stock of the Company transferred to it by the founder at the time of its creation. It is governed by a board of seven directors of whom four, as hereinafter noted, have been elected by the Foundation to the board of directors of the Company.

Respondent McFadden has been a director and vice-president of the Foundation since its incorporation in 1937, and was at the time of the transaction in question a director of the Company elected by the Foundation, and served as president of the Company during the period from January 1959 to October 1960. He allegedly authorized and instructed employee Fant and received from him reports of all the negotiations hereinafter narrated.

Respondent McLaren has been a director and president of the Foundation since its incorporation, and was at the time of the transaction in question a director of the Company elected by the Foundation, and served as the vice-president of the Company from January 1959 to June (October in original complaint) 1960, and thereafter as chairman of its board of directors.

Respondent Scarborough has been a director of the Foundation since its incorporation, and was at the time of the transaction in question and until June 1961 a director of the Company elected by the Foundation, and has been and is general counsel for the Company.

Respondent Gerdes has been a director of the Foundation since its incorporation, and was at the time of the transaction in question, and now is, a director of the Company elected by the Foundation.

The remaining three directors of the Foundation are not named as parties to the action.

Respondent Wheeler, whose wife is a director of the Foundation, was at the time of the transaction in question a director of the Company and has served as an assistant vice-president, as vice-president, and as secretary of the Company. In the proposed amended complaint it is further alleged that he was elected to the board of the Company by the Foundation.

The respondent Honer was at the time of the transaction in question and until October 1960 a director of the Company. The amendment similarly alleges election by the Foundation.

Directors of the Company succeeding Honer in October 1960, and Scarborough in June 1961, are named in the proposed amended complaint but not made parties.

Respondent Long was an assistant vice-president of the Company from July 9, 1959, to June 1960, when he was promoted to the office of vice-president which he now occupies. (His declaration recites that he was first employed by the Company in 1949 as an agricultural trainee; that he was elected an assistant vice-president on January 8, 1959, and vice-president in June 1960, and at all times after the former date was the manager of the agricultural operations of the Company.)

It is further alleged on information and belief that respondent Long, either individually or together with members of his immediate family, wholly owns or controls respondent The Baycrest Company, a California corporation with its principal place of business in Orange County, and respondent Bayside Associates, Inc., a similar corporation; and that he owns 50 per cent of the stock of respondent Maslo, Inc., a California corporation with its principal place of business in Los Angeles. Further facts in reference to Long's interest in these corporations and the relative proportion of the lands conveyed by the Company which was received by the Long interests and by others who are named in the complaint, but are not parties to the action, will be alluded to later.

At a regular meeting of the Company on January 8, 1959 the six members of the board of directors present (appellant

Burt [then Penniman], respondents McFadden, Scarborough, and Honer, one Plum and Myford Irvine; respondent Gerdes, absent), considered preliminary plans for the subdivision and development for residential building purposes of approximately 225 acres of land owned by the Company and situated on the westerly bluff of Newport Bay. The board, by the unanimous vote of those present, authorized the expenditure of up to $60,000 to complete an engineering study of said subdivision and development prior to consummating any lease or exchange of the property. In the proposed amended complaint it is further alleged that negotiations for the procurement of this property were instituted with Fant, the residential lease manager of the Company, by one Sturtevant (allegedly the owner or controller of a majority interest in First Westcliff Corporation), and one Mellott (allegedly the owner or controller of South Coast Construction Company) acting for themselves and on behalf of respondent Long; that no disclosure was made to the board of directors at that time concerning the overtures made to Fant by the group last mentioned.

(The declaration and deposition of Fant reflects that in July 1958, on the west bluff on lands previously acquired from the Company between 1953 and 1958, there were already three residential subdivisions known as "Westcliff," "Harbor Highlands" and "Baycrest" which represented the respective interests of Sturtevant, Mellott and Long; that they had been promised continued participation in the development of the nonview land; and that the Company had informally committed itself to transfer the 12.76-acre parcel, hereinafter referred to, to Sturtevant.)

The proposed amended complaint reflects that Fant thereafter engaged an engineering company to make sketches of the 225 acres to determine how much of the acreage should be sold or exchanged and how much should be retained by the Company; that with the approval of McFadden, representatives of the Company met with Sturtevant, Mellott and Long in reference to the engineering plans and studies of the area, and entered into an agreement whereby the latter agreed to, and subsequently, after the exchange of properties, in fact did reimburse the Company for some of the planning and engineering expense.

At a meeting on July 9, 1959, attended by all of the board of directors (those named above with substitution of respondents McLaren and Wheeler for Irvine and Plum), Fant

presented a plan for subdividing the 225 acres into residential lots of which 129 acres were proposed for sale or exchange, and the remainder were to be retained for lease development by the Company. The directors authorized the filing of preliminary plans with the city concerned, ordered an appraisal, and authorized the president, McFadden, to appoint a committee consisting of McLaren and Fant to present a master plan for the development of the acreage. The proposed amended complaint further states that the appraisal was only authorized at appellant Burt's insistence following her disagreement with a vice-president's estimate of $8,000 an acre for the land in question; that the same individual indicated that Sturtevant, Mellott and Long would be appropriate developers of the area as they had developed other acreage which had previously belonged to the Company, and which lay adjacent to the acreage under discussion; that at no time prior thereto was the board informed of the interest of that group in the 225 acres; and that at no time prior thereto had the directors been advised of any negotiations or cooperative arrangements with any group, nor had it authorized any such negotiations or arrangements.

(McFadden's deposition reflects that it was the policy under Myford Irvine to continue the operation with the same people as long as they did a good job and met the Company's terms; that he had heard Sturtevant's name discussed as the potential purchaser of the property involved; and that he knew all along Sturtevant and related entities would be the purchasers or the people with whom the Company was negotiating. Fant's declaration asserts that at this meeting the 129 acres to which he referred consisted of 117 acres of new subdivision on the bluff and 12 acres previously subdivided. The minutes of the meeting reflect no such segregation but merely refer to 129 acres out of a total of 225.)

According to the proposed amended complaint on September 9, 1959, the Grandview Building Company, a well-known builder and developer with extensive experience in residential subdivisions and with a reputation for unquestioned business and financial integrity, offered $12,000 per acre for approximately 125 acres of land lying on the westerly bluff; on September 14, 1959, one Diller, a builder and developer of similar qualifications, offered $13,000 per acre for approximately 100 acres of land similarly situated and on the same day appraisers for the Company returned an appraisal on 117 acres of the 225 acre parcel which placed values of $11,000 per acre and $9,850 per acre, respectively, on differ-

ent portions of the acreage according to the school district within which it lay. This appraisal report also placed a value of $19,000 per acre on 12.76 acres of land which constituted a separate parcel zoned for multiple residential, and which lay a considerable distance inland from the 225 acres under consideration. This appraisal was subsequently supplemented by an oral report which gave the same value to an additional 29 acres of land lying within the 225 acres and adjacent to the 117 already appraised.

It further appears from the later complaint that Fant, pursuant to instructions and authority given him by McFadden, disclosed the appraisal to Sturtevant who subsequently submitted an oral offer on behalf of himself, Mellott and Long to purchase the properties at their appraised values; and that Sturtevant was advised that he and his group could purchase an additional 29 acres, making a total of 146 acres of residential property.

At a special meeting of the board of directors on September 21, 1959, at which all seven members were present, Fant reported on the appraisal of the 129 acres and the offers from Sturtevant, on behalf of First Westcliff Corporation, South Coast Construction Company and The Baycrest Company, and from Grandview Building Company, and Diller. McFadden informed the board of directors that Long was a minority stockholder of The Baycrest Company. According to the complaint "[I]t was moved, seconded and carried that the president of the Company be authorized to accept on behalf of The Irvine Company one of the offers for the sale or exchange of said 129 acres deemed by him to be just and reasonable and for the best interests of the Company, including any offer made by or on behalf of The Baycrest Company regardless of the interest therein of defendant Long." The foregoing allegations are supplemented in the proposed amended complaint by a recital that, as did McFadden, Long himself stated that he had a "small minority interest."

(According to Fant at this meeting he showed the directors a map, made part of the record, on which are outlined in red and green respectively, a 146-acre parcel, being 29 acres more than the 117 originally contemplated, and the 12.76-acre parcel. The minutes reflect no reference to the 12.76 parcel, and again refer to the single aggregate figure of 129 acres. McLaren, Scarborough and Wheeler confirm Fant's version of the meeting; Thomas the then assistant secretary confirms

the plaintiff's version, and McFadden could not remember whether the 12.76 acres were discussed at that meeting or not.)

The amended complaint continued by alleging that on or about September 24, 1959, a representative of Grandview Building Company met with Fant and was advised ''[T]hat the Company was not interested in doing business with them, that it had no need for their offer, that it was uncertain as to how much, if any, of the property would actually be disposed of by the Company, that he was unable to give them any clarifying data with reference to the actual amount of property to be conveyed, and that they would have to submit a firm offer, if they intended to do so, within a limited period of time. Said Grandview Building Co. was not informed on this occasion or at any other time that the Company intended to dispose of said 12.76 acres of multiple zone type property and was at all times unaware of its availability.'' Similar allegations relate to a meeting with a representative of the Diller organization on September 29, 1959, with the additional assertion that Fant stated ''that The Irvine Company was not interested in making money, and that it was essentially a charitable institution.'' Under date of September 30, 1959, Grandview Building Company increased its offer to $13,000 per acre. ''[N]o further attempt was made by the Company or its representatives to pursue negotiations with either Grandview Building Co. or R. S. Diller and the attempts on the part of representatives for Grandview and Diller to obtain complete information concerning the proposed transaction, to increase the offers previously made or to in any way go forward with negotiations were ignored or discouraged.''

(Fant in his declaration and deposition alleges that he cooperated in giving these bidders information, and denies the charges in the proposed amended complaint and the statements in the declarations filed by representatives of the bidders upon which those allegations are predicated.)

It further alleged in the proposed amended complaint that ''Sometime subsequent to said board of directors meeting on September 21, 1959 Mr. Fant informed Mr. Sturtevant of said Grandview and Diller offers and informed him also that it would be necessary for him to revise his prior offer. Thereafter on October 5, 1959 Mr. Sturtevant on his own behalf and on behalf of Mr. Mellott and defendant Long submitted, for the first time, a written offer to acquire said 146 acres at $13,000.00 per acre. A separate written offer to acquire said

12.76 acres at $19,000.00 per acre was submitted by Mr. Sturtevant acting alone.''

At a special meeting held October 13, 1959, McFadden reported that he had accepted an offer from Sturtevant on behalf of the companies referred to above to exchange 146 acres of the original 225 at a price of $13,000 per acre, and for an additional 12.76 acres at $19,000 per acre for his own account. The transactions were ratified and approved by affirmative vote of directors McFadden, McLaren, Scarborough and Wheeler, Burt dissenting and Gerdes and Honer being absent. In response to appellant Burt's inquiry whether there had been further negotiations with the other offerors, or an attempt to secure other offers in respect of the 17 acres which had been added to the 129 or the 12.76 acres of multiple residential, McFadden allegedly advised her that the property was sold and the matter was closed. The proposed amendment supplements the foregoing by alleging that at no time prior to October 13, 1959, were the directors advised of the prospective sale of the additional 17 acres, or of the 12.76-acre parcel, nor did they ever prior thereto authorize negotiations for the sale or exchange of the same; that there had been no acceptance of the Sturtevant offer at the time of the directors' meeting, and in fact it was not accepted until several days later.

Under date of October 16, 1959, Grandview Building Company inquired concerning the status of its offer and requested an opportunity to bid competitively if a better offer had been received. On or about October 20, 1959, McFadden rejected the Grandview and Diller offers.

The proposed amended complaint reflects that on the same day as the letters rejecting the offers were dated, the board of directors met to discuss various properties in the Imperial Valley to be received in exchange for the properties to be conveyed to Sturtevant et al.; that no mention was made of Grandview's offer to bid competitively; that all of the directors present (Gerdes and Honer, absent), including appellant Burt, approved a list of preferred and alternate properties for the exchange; that subsequently the minutes were corrected on appellant Burt's demand to change an erroneous impression that she had approved the exchange to the Sturtevant group, as distinguished from approving the properties selected for such exchange.

There follow allegations concerning the execution of a contract of exchange between the Company and Sturtevant on

November 4, 1959, and the exchange of deeds on January 8, 1960.

Insofar as Long is concerned it is alleged that Sturtevant was his agent and that at the time of the acceptance of the Sturtevant offer he had the right to acquire one-third of the 146 acres in fee. At the time of the execution of the exchange a one-half interest in 49.35 acres was conveyed by Sturtevant to The Bayside Company and Bayside Associates, Inc., and the other one-half to Ivan Wells & Sons and two other corporations not parties thereto. Thereafter the first named corporations transferred a 15 per cent interest in the land to Maslo, Inc., and all six corporations formed a partnership to develop, subdivide and sell the 49.35 acres. By brochures issued February 3, 1960, and March 1, 1960, it was represented that Long and Wells had equal interests in that portion of the property. The board of directors was never informed at any time that Maslo, Inc., or Wells and the two corporations which took conveyances of one-half of the 49.35 acres, were to acquire or had acquired any interest in the property.

Plaintiffs allege that at a special meeting of the board of directors on April 14, 1960 (Burt, McLaren, Gerdes, Wheeler, Honer and Scarborough, present; McFadden, absent), when Burt requested Long to inform the board of directors concerning the exact nature of his interest in the development, defendant McLaren, then presiding, instructed Long not to answer; that on June 21, 1960, Long was elected a vice-president of the Company by affirmative vote of McFadden, McLaren, Wheeler and Honer, Gerdes and Scarborough absent, and Burt, who expressed her concern about Long's interest in the land, dissenting; that at no time prior or subsequent to the exchange in January 1960 were plaintiffs informed of the true nature and extent of the interest of Long in the property; and that they only discovered that he owned all the stock of The Baycrest Company in September and October 1959, after investigation conducted in 1960 and 1962.

(Long's declaration reflects that he offered to review the matter of his interest in the Baycrest development with appellant Burt immediately following the April meeting, and that on June 27, 1960, he went to her home at her request and discussed the project in detail. Burt, in her deposition, acknowledges that this meeting took place; and that at the meeting of April 14, 1962, she secured permission, thereafter

exercised, for her attorneys to have access to the records of the corporation for the purpose of inspecting and copying the same.)

In respect of defendant Long it is further alleged that he participated in staff meetings in which the negotiations, the plans for development and the offers for the property were discussed and acted upon; that as officer in charge of agricultural operations he was authorized and directed to and did locate and negotiate for the parcels of land in the Imperial Valley selected for acquisition; and that his judgment in the foregoing respects and in regard to the value of such property was relied upon by plaintiff Burt and other directors. On information and belief it is alleged that the market value of said parcels was less than the value assigned them, which was the asking price of the sellers.

It is alleged that Long and Wells have developed 168 residential lots from their acreage of which 33 were to be sold as lots and 135 developed; that 14 of the 33 lots have been sold and 85 residences in the $40/60,000 bracket have been contracted and sold; that of 24 additional residences under construction 11 have been sold; that Long will realize a profit of not less than $125,000, for which he should account to the Company.

Plaintiffs set forth values for the 146 acres of $16,000 per acre, and for the 12.76 acres of $20,000 per acre and allege a loss to the Company of $450,760 by the exchange. They further state that $500,000 was lost by transferring instead. of retaining for lease the 29.00 acres not originally contemplated for sale or exchange. (By declarations, appellants submitted appraisals of from $15,000 to $18,000 per acre for the 146-acre parcel, and $19,000 and $19,750 for the 12.76-acre parcel.)

Remaining allegations present mixed questions of fact and law as to the theories on which the defendants Long and defendants McFadden and McLaren should be held liable, the performance of conditions precedent to a stockholders' suit, the necessity for equitable relief, the engagement of counsel, and the residence in San Francisco of two of the defendants.

A second cause of action reiterates the same allegations, but joins defendants Scarborough, Gerdes, Wheeler and Honer as acting in concert with McFadden and McLaren. A third cause of action purports to bring in the Foundation by reference to the relationship of McFadden, McLaren, Gerdes and Scarborough to the Foundation. A fourth cause of action

alleges McFadden, McLaren and Long were acting in concert.

The prayer seeks recovery on behalf of the Company from the Foundation and the six named directors of the Company of the sums of $450,760, and $500,000, as set forth above, and an accounting from Long and his companies of the profit of his venture to be recaptured for the Company, and in addition attorneys' fees, costs, and such other equitable relief as may be proper.

(In addition to refusing on July 25, 1962, to sue on behalf of the corporation as requested by plaintiff, the directors (Gerdes, McFadden, McLaren, Thomas and Wheeler, with Burt and Ramey dissenting) adopted two resolutions purporting to confirm the exchange and the actions of Long in the premises.)

### Decision

#### I. `The trial court abused its discretion in failing to permit appellants to amend their complaint.

Respondents rely upon the decision and appellants point to the general rule stated in *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659 [297 P.2d 638], wherein it is stated in reference to the latter: ''In the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment. [Citations.]'' (46 Cal.2d at p. 664; see also *Temescal Water Co.* v. *Department of Public Works* (1955) 44 Cal.2d 90, 107 [280 P.2d 1]; *Division of Labor Law Enforcement* v. *Barnes* (1962) 205 Cal.App.2d 337, 343 [23 Cal. Rptr. 55]; *Richards* v. *Hillside Development Co.* (1960) 177 Cal.App.2d 776, 784 [2 Cal.Rptr. 693]; *Hawkins* v. *Oakland Title Ins. & Guar. Co.* (1958) 165 Cal.App.2d 116, 123 [331 P.2d 742]; *King* v. *Mortimer* (1948) 83 Cal.App.2d 153, 158 [188 P.2d 502].)

The court, however, affirmed a judgment for the defendant entered after a general demurrer had been sustained without leave to amend because it concluded: ''The facts alleged do not entitle plaintiff to reformation, and, in view of other facts admitted by plaintiff, there is no reasonable possibility that the complaint can be amended to state a cause of action on any theory.'' (46 Cal.2d at p. 662; see also *Starbird* v. *Lane* (1962) 203 Cal.App.2d 247, 262-263 [21 Cal.Rptr. 280]; *Karpe* v. *Great American Indem. Co.* (1961) 190 Cal.App.2d 226, 233 [11 Cal.Rptr. 908]; *Schultz* v. *Steinberg* (1960) 182

Cal.App.2d 134, 140-141 [5 Cal.Rptr. 890] ; *Findley* v. *Garrett* (1952) 109 Cal.App.2d 166, 179 [240 P.2d 421] ; *Barrier* v. *Alexander* (1950) 100 Cal.App.2d 497, 501 [224 P.2d 436].)

Attention is therefore directed to the record to determine whether the facts before the court, both as alleged in the complaint and amended complaint, and as brought out in evidence in connection with the motions for security reveal a reasonable possibility that appellants, or either of them, can state a cause of action against respondents, or any of them. Such an examination necessarily also entails consideration of whether or not such facts demonstrate that appellants are precluded as a matter of law from so stating a cause of action. ■ In such a review ''Allegations that the acts of [respondents or any of them] were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law which are not to be deemed admitted by a demurrer. [Citations.]'' (*Faulkner* v. *California Toll Bridge Authority* (1953) 40 Cal.2d 317, 329 [253 P.2d 659].) ■ ''[*I*]*n a case of this kind, general charges of fraud, conspiracy and bad faith on the part of corporate directors are insufficient in the absence of allegations of specific facts adequate to show the basis for the general charges.''* (*Starbird* v. *Lane, supra,* 203 Cal.App.2d 247, 255; and see *Findley* v. *Garrett, supra,* 109 Cal.App.2d 166, 176.)

■ At the same time it also must be recognized that the failure to plead specific language descriptive of the acts relied upon to constitute fraud in the original complaint does not justify the sustaining of the demurrer without leave to amend if the record reflects the possibility of amendment to show such facts. (*Lawrence* v. *City of Santa Rosa* (1959) 53 Cal.2d 282, 283 [1 Cal.Rptr. 339, 347 P.2d 683] ; and see *George* v. *Simpson* (1936) 14 Cal.App.2d 571, 577 [58 P.2d 666].) In consideration of the question of the possibility of appellants pleading a cause of action, as distinguished from the question of the right of respondents to have security, it will be necessary to disregard the denials and explanations proferred by respondents in their declarations. To do otherwise would distend the proceedings to an unwarranted hearing on the merits, rather than a determination of whether appellants were able to present justiciable issues.

The question of whether or not the matters which are reflected by appellants' pleadings, both filed and proposed, and by their declarations, demonstrate that they are precluded from alleging a cause of action by reason of the statute of

850

limitations, laches or ratifications, is in part dependent on the nature of the alleged claim, and the party or parties against whom it may be asserted; therefore, it is proper to first consider these matters.

(A) The facts alleged by appellants disclose a justiciable cause of action.

"It is hornbook law that directors, while not strictly trustees, are fiduciaries, and bear a fiduciary relationship to the corporation, and to all the stockholders. They owe a duty to all stockholders, including the minority stockholders, and must administer their duties for the common benefit. The concept that a corporation is an entity cannot operate so as to lessen the duties owed to all of the stockholders. Directors owe a duty of highest good faith to the corporation and its stockholders.'' (*Remillard Brick Co.* v. *Remillard-Dandini Co.* (1952) 109 Cal.App.2d 405, 419 [241 P.2d 66]; see also *Pigeon Point Ranch, Inc.* v. *Perot* (1963) 59 Cal.2d 227, 233 [28 Cal.Rptr. 865, 379 P.2d 321]; *Bainbridge* v. *Stoner* (1940) 16 Cal.2d 423, 427 [106 P.2d 423]; *Lawrence* v. *I. N. Parlier Estate Co.* (1940) 15 Cal.2d 220, 229 [100 P.2d 765]; *Efron* v. *Kalmanovitz* (1964) 226 Cal.App.2d 546, 556 [38 Cal.Rptr. 138]; *Kennerson* v. *Burbank Amusement Co.* (1953) 120 Cal. App.2d 157, 171 [260 P.2d 823]; *Fornaseri* v. *Cosmosart Realty etc. Corp.* (1929) 96 Cal.App. 549, 556 [274 P. 597]; *Reid* v. *Robinson* (1923) 64 Cal.App. 46, 57 [220 P. 676]; 3 Fletcher Cyc. Corp. (1965) § 838, pp. 172-187.) The same duty of good faith in dealings, with or on behalf of the corporation, is demanded of officers of the corporation (*Pigeon Point Ranch, Inc.* v. *Perot, supra; Fornaseri* v. *Cosmosart Realty etc. Corp., supra;* and *Reid* v. *Robinson, supra*), and of majority stockholders (*Efron* v. *Kalmanovitz, supra;* 13 Fletcher Cyc. Corp. (1955) §§ 5810 and 5811, pp. 148-159). The law of West Virginia, where the Company was incorporated, imposes similar duties and obligations (see *Chounis* v. *Laing* (1942) 125 W.Va. 275, 289 [23 S.E.2d 628, 636]; *Gilmore Mfg. Co.* v. *Lewis* (1928) 105 W. Va. 102 [141 S.E. 529]; *Tri-State Coal & Timber Lands Assn.* v. *Neace* (1922) 92 W.Va. 196 [114 S.E. 569]; *Tierney* v. *United Pocahontas Coal Co.* (1920) 85 W.Va. 545 [102 S.E. 249]; *Sweeney* v. *Grape Sugar Co.* (1887) 30 W.Va. 443 [4 S.E. 431, 8 Am.St.Rep. 88]).

It is a violation of this duty for officers, or directors, or majority shareholders to give away or appropriate to themselves any corporate assets. (*Chounis* v. *Laing, supra,* 125 W.Va. 275, 291-292 [23 S.E. 628, 637].) Any trans-

action between the corporation and a director or a dominant or controlling stockholder, or group of stockholders, is subject to the following test: "Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. [Citing a case.] The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside." (*Pepper* v. *Litton* (1939) 308 U.S. 295, 306 [60 S.Ct. 238, 84 L.Ed. 281], as quoted and adopted in *Remillard Brick Co.* v. *Remillard-Dandini Co., supra,* 109 Cal. App.2d 405, 420; and in *Efron* v. *Kalmanovitz, supra,* 226 Cal.App.2d 546, 557; 3 Fletcher Cyc. Corp. (1965) §§ 918-919, pp. 369-379; 13 *id.* §§ 5810-5811, pp. 148-159.)

Where the transaction results in a secret profit to the director, a suit may be brought by or on behalf of the corporation to recover the same, and an officer and director who knowingly approved and participated in the transaction may be held liable for the loss suffered by the corporation even though he personally received no consideration. (*Reid* v. *Robinson, supra,* 64 Cal.App. 46, 57-58.)

The general rule was recognized in *Fornaseri* v. *Cosmosart Realty etc. Corp., supra,* 96 Cal.App. 549, at page 556, as follows: "Minority stockholders may maintain a suit in equity for redress for wrongful disposal of property, or for an accounting in behalf of themselves and other stockholders for the benefit of the corporation, when through the fraud or malversation of officers or directors, or through the fraud or coercion of a third person, the corporation has been divested of property, and when upon request the officers fail and refuse to institute proceedings to remedy the injury." In that case, however, the court sustained a judgment entered when the appellants failed to amend their second amended complaint after a demurrer to it was sustained. It found that it was extremely doubtful that the acts of the directors of which complaint was made amounted to a violation of discretion on their part. It applied the so-called "business judgment rule" (see 3 Fletcher Cyc. Corp., § 1039, pp. 621-628) and set forth the following precepts: "In the absence of fraud, breach of trust or transactions which are *ultra vires,* the conduct of directors in the management of the affairs of a

corporation is not subject to attack by minority stockholders in a suit at equity, where such acts are discretionary and are performed in good faith, reasonably believing them to be for the best interest of the corporation. [Citations.] . . . Every presumption is in favor of the good faith of the directors. Interference with such discretion is not warranted in doubtful cases. In *Gamble* v. *Queens County Water Co.,* 123 N.Y. 91 [25 N.E. 201, 9 L.R.A. 527], it is said: 'To warrant interference by a court in favor of minority stockholders . . . a case must be made out which plainly shows that such action is so far opposed to the true interests of the corporation itself as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interest, but that he must have acted with an intent to subserve some outside purpose, regardless of the consequences to the company.' " (96 Cal.App. at pp. 557-558; and see *Marble* v. *Latchford Glass Co., supra,* 205 Cal.App.2d 171, 178-179; *Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 256-257 [13 Cal.Rptr. 491]; *Olson* v. *Basin Oil Co.* (1955) 136 Cal.App.2d 543, 549 [288 P.2d 952]; *Findley* v. *Garrett, supra,* 109 Cal.App.2d 166, 174-175 and 178-179; *Wall* v. *Board of Regents of University of Cal.* (1940) 38 Cal.App.2d 698, 699 [102 P.2d 533]; *Casey* v. *Woodruff* (S.Ct. 1944) 49 N.Y.S.2d 625, 626.)

"The rule exempting officers of corporations from liability for mere mistakes and errors of judgment does not apply where the loss is the result of failure to exercise proper care, skill and diligence. 'Directors are not merely bound to be honest; they must also be diligent and careful in performing the duties they have undertaken. They cannot excuse imprudence on the ground of their ignorance or inexperience, or the honesty of their intentions; and, if they commit an error of judgment through mere recklessness, or want of ordinary prudence and skill, the corporation may hold them responsible for the consequences.' " (3 Fletcher Cyc. Corp. (1965) § 1040, p. 628, quoting original work of Fletcher as recited in *Wangrow* v. *Wangrow* (1924) 211 App.Div. 552, 556 [207 N.Y.S. 132, 136].)

A reconciliation of these last two concepts is found in *Casey* v. *Woodruff, supra,* wherein it is stated: "The question is frequently asked, how does the operation of the so-called 'business judgment rule' tie in with the concept of negligence? There is no conflict between the two. When courts say that they will not interfere in matters of business judgment, it is presupposed that judgment — reasonable

diligence—has in fact been exercised. A director cannot close his eyes to what is going on about him in the conduct of the business of the corporation and have it said that he is exercising business judgment. Courts have properly decided to give directors a wide latitude in the management of the affairs of a corporation provided always that judgment, and that means an honest, unbiased judgment, is reasonably exercised by them. [Citations.]'' (49 N.Y.S.2d at p. 643.)

Appellants' ''claim is that the respondents knowingly and wilfully engineered a disposition of assets of the corporation to some favored persons, including respondent Long—an officer of the corporation—under terms and conditions less favorable than respondents knew could have been obtained from others and upon terms and conditions violative of the best interests and welfare of the corporation. The motivation of respondents was animus and hostility toward appellants and a felt compulsion to reward favored persons, including an officer of the corporation.'' (The allegation that ''animus and hostility toward appellants'' were a motivation is disregarded as not sustained by the record.)

Respondents Long et al. assert: ''Actually, the transaction which is the subject of the complaint was conducted openly and in accordance with reasonable business practices. Stripped of the factual complications created by the number of corporations involved it is easy to understand. The Company had sold property in Newport to Messrs. Sturtevant, Mellott and Long several years before and they had done a good job. It was only natural that the Company negotiate with them for the balance of the acreage in that area. The property was appraised to establish a value and transferred for an amount substantially in excess of this appraisal.''

Respondents Company et al. state, ''On these facts the only question posed is whether the Company should have accepted one of the offers then available at a price which was well above the appraised value of the land or held the land longer in the hope of obtaining a higher price.''

Both respondents contend that the facts merely present a case of disagreement between appellants and respondent directors over the business policies of the Company, and that the ''business judgment rule'' precludes any action at this time. Respondents' version of the facts tends to sustain their contention. In *Casey* v. *Woodruff, supra,* which dealt with the issuance and sale of corporate securities, the court stated as follows: ''It probably would have been better judgment to

have invited proposals from one or two other investment bankers, before the definite commitment from Morgan Stanley & Co. was sought and obtained. But the failure so to do does not establish liability for negligence. The minimum price for which the directors obtained a commitment from Morgan Stanley & Co. was a fair one. The market was tested by four directors of the Erie who were officers of large financial institutions in constant touch with the investment security market. The Commission itself indicated that the price at which it was proposed to sell the Series D bonds to Morgan Stanley & Co. was a fair one.'' (49 N.Y.S.2d at p. 646.) It further noted: ''The failure to permit Halsey Stuart & Co. and Otis & Co. to submit bids on February 2nd and 3rd has caused the court considerable concern. However, those requests to bid were not just ignored and brushed aside. Mr. Thompson discussed the matter with all the members of the Finance Committee and with nine of the fifteen directors of the railroad, all he was able to reach on short notice. They came to the conclusion that they were obligated to carry out the transaction with Morgan Stanley & Co.'' (*Id.*)

In the instant case the alleged facts go further. Appellants' version of the facts supports their claim as stated above. If the bids of the competing subdividers were ''ignored and brushed aside'' and the other proceedings taken as alleged by appellants, there is support for the inference that there was a studied plan to give favored persons the land at a price less favorable than that which could have been obtained from others. Under such circumstances respondents cannot find refuge in the ''business judgment rule.'' (*Abrams* v. *Allen* (1947) 297 N.Y. 52, 55 [74 N.E.2d 305, 306, 173 A.L.R. 671, 673]; *Clayton* v. *Farish* (1947) 191 Misc. 136 [73 N.Y.S.2d 727, 745-749]; *Schmid* v. *Lancaster Ave. Theatre Co.* (1914) 244 Pa. 373, 382-385 [91 A. 363].) In the *Abrams* case, as is pertinent here, the court remarked: ''Whether, or how, these accusations may be proven is not our present concern. These defendants may not have done these things at all, or they may have done them for the best of reasons. But the complaint, which we are bound to take as true at this point, says the opposite. If we dismiss, we are saying that for such spoilation of a corporation, there is no redress.'' (297 N.Y. at p. 56 [74 N.E.2d at p. 307].)

Appellants in their proposed amended complaint raise several issues other than the intentional failure of the respondent directors to get the best price for the land and the coexistent inadequacy of the consideration given the corporation by

respondent Long and his copurchasers. These are the alleged failure to disclose the acreage to be sold, and failure to disclose the true nature and extent of Long's interest in the transaction. The effect of these issues on the defenses allegedly reflected by the record is hereinafter discussed. Affirmatively it appears that applicants claim $500,000 damages for failure to retain the 12.76-acre parcel and 17 acres of the 146-acre parcel. There is nothing to show that the decision to sell these parcels rather than to hold them for lease was other than a question of business judgment. Appellant Burt's ignorance or confusion and failure as a director to authorize or ratify the selection of these parcels for sale cannot affect that issue. The concealment, however, if true is an evidentiary fact which strengthens appellants' asserted inference of preference to the purchasers with attendant disregard of the rights of the corporation and its stockholders.

(B) The nature of the liability for the intentional sale of the corporate assets at less than fair market value depends upon the degree of participation of the person charged.

An analysis of the record in the light of the foregoing principles reveals that respondents Long and McFadden, together with Fant, are named as selecting the buyers and fixing the price and disregarding further negotiations with other reputable subdividers interested in the property. Such allegations if sustained and augmented by a showing of a diversion of corporate assets for less than the price which otherwise could have been received give rise to a cause of action in fraud. (*Bainbridge* v. *Stoner* (1940) 16 Cal.2d 423, 430 [106 P.2d 423]; *Whitten* v. *Dabney* (1915) 171 Cal. 621, 627-628 [154 P. 312]; *Fox* v. *Hale & Norcross Silver Min. Co.* (1895) 108 Cal. 369, 426 [41 P. 328]; *Efron* v. *Kalmanovitz, supra,* 226 Cal.App.2d 546, 559-560; *Uchida Investment Co.* v. *Inagaki* (1952) 108 Cal.App.2d 647, 653 [239 P.2d 644]; *Reid* v. *Robinson, supra,* 64 Cal.App. 46, 48 and passim; *Beal* v. *Smith* (1920) 46 Cal.App. 271, 279 [189 P. 341]; *James* v. *P. B. Steifer Mining Co.* (1918) 35 Cal.App. 778, 786 [171 P. 117]; *Chounis* v. *Laing, supra,* 125 W.Va. 275 [23 S.E.2d 628, 639]; *Schmid* v. *Lancaster Ave. Theatre Co., supra,* 244 Pa. 373, 379.)

McLaren is not directly charged, as is McFadden, with instructing and authorizing Fant to make the statements alleged (but denied by Fant) to the other interested subdividers. The original complaint reflects that the board of directors recommended that McFadden appoint McLaren and

Fant a committee to present a master plan for the development of the acreage involved. In each cause of action the charging paragraphs which contain allegations of fact and mixed conclusions of fact and law state that the matters relating to the sale of the property in question ''were under the direct supervision and control of defendants McFadden and McLaren acting in concert as president and vice-president respectively of the Company.'' The foregoing allegations appear to suffice to charge McLaren with actual participation in the alleged engineered disposition of assets. ■ It is true that neither McLaren nor McFadden received any personal benefit from the transaction, but their participation renders them no less liable for fraud. In *Schmid* v. *Lancaster Ave. Theatre Co., supra*, 244 Pa. 373, at page 379, the opinion recites: ''What the bill specifically charges is, that the execution of the proposed lease to the amusement company would be a fraud on plaintiffs' rights as minority stockholders in the Lancaster Avenue Theatre Company, for the reason that it is a lease of the entire property of the theatre company at a rental of $22,500 per annum, when another equally responsible party stood ready and offered to pay an annual rental of $30,000 for the same property, a fact known to the directors at the time. If this result was reached by the votes of directors financially interested in the amusement company, except as otherwise explained, the law would refer it to the fact stated and condemn it as an actual fraud; if by the votes of directors not financially interested in the amusement company, unexplained, the law would condemn it none the less, but, as a constructive fraud, one not depending on fraudulent intent, but one arising by legal implication. The failure of a complainant to sustain the positive averment of actual fraud, will not entitle the defendant to the dismissal of the bill, when there is proof of constructive fraud. Ricketts's Appeal, 9 Sadler 247. So, if the finding that the directors named were without financial interest in the amusement company were to be sustained, it would not by any means be conclusive of the controversy.''

In *Reid* v. *Robinson, supra,* the contention that lack of benefit precluded liability was disposed of as follows: ''It is finally urged that because Vesper reaped none of the benefits of the illegal transaction he should escape the judgment against him. On this point the court's findings are in substance that Vesper knew just what was being done and, with such knowledge, assisted in carrying out some of the details and thereafter concealed the facts from the plaintiffs. The

evidence clearly supports the conclusion reached by the court in this regard. Mr. Vesper's duty as an officer of the corporation required of him that in all of his dealings for and on behalf of the corporation he exercise the utmost good faith. With knowledge on his part that the fraud was being attempted primarily as against the corporation and ultimately as against the stockholders, his duty to acquaint the other officers of the corporation with the facts concerning the transaction and to use every effort to prevent the consummation of the fraud was so plainly his path that it would seem impossible that he might fail to see it and to follow it, to the end that the stockholders of the corporation would suffer no detriment by reason of his negligence in performing his bounden duty to them. Even as a director of the corporation, without the added responsibility of president and manager thereof, it is plain that he could not remain silent and willingly permit, much less actively assist in, any act that would permit any part of the assets of the corporation to be fraudulently converted by one of the directors to his own use. The fiduciary relationship existing between the officers of the corporation and its stockholders forbids that a director, either expressly or impliedly, consent to a diversion of the corporate property from the corporate use to private purposes. The assumption on the part of Mr. Vesper that because the corporation was getting all it asked for the property, no damage resulted to it, even if Robinson and others received something in addition thereto, does not accord with the law affecting such transactions. He knew, or at least he should have known, that in the circumstances the corporation was entitled to every cent for which the property was sold, less legitimate expenses in connection therewith. His passive acquiescence, if not his active participation in the fraud, constituted a neglect of his duty to the corporation and to its stockholders which resulted in damage to them and for which, notwithstanding the fact that he personally did not profit financially thereby, he must respond.'' (64 Cal.App. at pp. 57-58.)

The last passage focuses analysis upon the liability, if any, of the remaining named directors. It suggests that passive acquiescence constitutes negligence as distinguished from fraud. In *Fox* v. *Hale & Norcross Silver Min. Co., supra,* the court noted in regard to the directors: '' [T]hey seem one and all to have intrusted the management of the entire business to the president, Levy, and to the superintendent of the mine; and, if these officers, by abuse of their trust, caused the loss and damage to the mining company which the court has found, the

evidence warrants the conclusion that the directors were at least guilty of gross negligence. But, except as to Levy, Hoeflich, Sell and Bridge, I do not think there is any evidence that the directors knew of the unlawful agreement between Levy and the mill-owners, or that they were active participants in the conspiracy and frauds alleged in the complaint.'' (108 Cal. at p. 387.) The opinion concluded: ''As to the directors of the Hale & Norcross Company, other than Levy, it is not seriously contended that they are liable except on the ground of negligence, and it is clear that such was the opinion of the superior court. But they were not charged with negligence in the complaint, but only with fraud. Fraud and negligence, however culpable, are not the same thing. It is true that, when negligence causes an injury of the same character as would be occasioned by an intentional fraud, it is visited with the same consequences, so far as compensation to the injured party is concerned, but the plaintiff has no right to demand a conviction of fraud when no fraud has been committed; when he relies on fraud he ought to plead fraud, and when he relies on negligence he ought to plead negligence, not only because the defendant has a right to know what the charge is which he is called upon to meet, but because the defenses are different. An action for relief on the ground of negligence is ordinarily barred by the statute in a shorter time than an action for relief on the ground of fraud.'' (P. 424.)

In neither the original complaint, nor the proposed amended complaint, nor the declarations filed in connection with the motion for security is there found any allegation of specific acts or omissions of the four directors other than McFadden and McLaren. It is generally alleged that the Foundation, and the interlocking directors and the directors appointed by it have ''dominated and controlled the administration, conduct and management of the business activities and affairs of the Company.''

In the original complaint it was alleged that all six directors ''were negligent and remiss in their responsibilities as directors and in their fiduciary obligations to the corporation and to stockholders in authorizing, acquiescing in or permitting the Company to become obligated and committed to said offer and Agreement of Exchange and knew or should have known that a substantially better price per acre could have been obtained by the Company.'' Similar charges of negligence were made against the Foundation as the controlling shareholder, and the interlocking directors who represented it in controlling the Company.

In the second cause of action in the proposed amended complaint it is alleged: "During the period from January, 1959 through January, 1960 the preparation of proposed plans for the development of said 225 acres of Company property, the negotiations conducted with reference to said property, the decisions made by the Company with respect to the amount of said property to be disposed of and the selection of the persons, firms and corporations to be permitted to acquire said property were under the direct supervision and control of defendants McFadden and McLaren *acting* in concert as president and vice president, respectively, of the Company and *in concert with defendants Gerdes, Scarborough, Wheeler and Honer* as directors of the Company and were not made in good faith, were not in the best interests of the Company and constituted a fraudulent and improper disposition of corporate assets for the following reasons:

"1. The price per acre purportedly accepted was below the true fair market value and substantially below the best price obtainable which defendants McFadden and McLaren knew or should have known and wrongfully failed and refused to reveal to the board of directors.

"2. Defendants McFadden and McLaren knew or should have known the number of acres which was to be the subject of said sale or exchange and wrongfully failed and refused to disclose to the board of directors the true facts concerning the number of acres involved. . . .

"3. Defendants McFadden, McLaren and Long wrongfully failed and refused to disclose to the board of directors full and complete information as to the true nature and extent of defendant Long's interest. . . .

"4. Defendants McFadden and McLaren at all times secretly intended to prevent the Company from entering into legitimate good faith negotiations with the bidders other than Mr. Sturtevant and wrongfully and improperly intended to and did direct the course of negotiations for the sale or exchange of said property in a manner so as to assure that only Mr. Sturtevant, acting for himself, Mr. Mellott and defendant Long, would have a fair opportunity to acquire said property. . . .

"5. Defendants McFadden and McLaren wrongfully and improperly refused to permit negotiations to proceed concerning and to obtain bids from developers other than Mr. Sturtevant for said two additional parcels of 17 acres and 12.76 acres, respectively, . . .

"6. At all times during the period from January, 1959 through July of 1960 *the board of directors as then constituted was held captive of and dominated by said defendant directors elected by the Foundation who constituted a majority of the board* and accordingly the Company itself as well as its board of directors were each thereby rendered powerless and unable to act to protect the interests of the Company and were each therefore incapable of authorizing, approving or ratifying said wrongful and improper acts of defendants McFadden, McLaren and Long.

"7. Said false representations and concealments by defendant Long and by defendants McFadden and McLaren alone and *acting in concert with defendants Scarborough, Gerdes, Wheeler and Honer* were in each instance a breach of the fiduciary obligation owed to the Company by said defendants as directors and officers thereof, were carried out with the intent to deceive the Company and plaintiff Burt, were relied upon by the Company and plaintiff Burt to their detriment, all as hereinabove more specifically set forth." (Italics added.)

The third cause of action in the proposed amended complaint alleges that the negotiations and the transaction in question "were under the direct supervision and control of defendants McFadden and McLaren *acting* in concert as president and vice president, respectively, of the Company and of the Foundation, and *in concert with defendants Gerdes and Scarborough,* constituting a majority of directors of both the Company and the Foundation, . . ." (Italics added.) The remaining allegations follow the format set forth above.

These allegations do not charge that the transaction was "under the direct supervision and control of Gerdes, Scarborough, Wheeler and Honer" or that these four were acting in concert with McFadden and McLaren as distinguished from the converse. The timpanist in the background may be part of the orchestra working in concert, but he cannot be charged with discords produced by deviations from the score by the principal instrumentalists.

The original allegations of negligence, the specific allegations in the body of the proposed amended complaint which relate to the failure to keep the board of directors advised of the true status and nature of the transaction, and the allegations set forth above in respect of respondents McFadden and McLaren, all indicate that appellants knew how to charge specific acts of misconduct if they exist.

In construing a record on the question of amendment the general rule is, as first stated herein, that there has been an

abuse of discretion if there is a reasonable possibility that the defect can be cured by amendment. It has been stated: "Many and varied circumstances may, however, properly convince the trial court that the complaint demurred to is beyond cure by amendment, and may therefore form the basis for an order withholding leave to amend which is impregnable on appeal.

"Thus, plaintiff himself may justify such an order by indicating that he has put forth his maximum effort; or the court may be led to this conclusion by the circumstance that the complaint under consideration is itself an amended complaint, so that the trouble lies 'in a lack of facts rather than in the fault of the pleader.' Again, the decision to deny leave to amend may be made in the light of the proposed amendment, which appears to make no substantial change in the complaint." (2 Chadbourn, Grossman and Van Alstyne, Cal. Pleading, § 1356, pp. 505-506.) In this case there is a proposed amended complaint. If it is construed liberally in favor of the pleader in accordance with the general rule (see 2 Witkin, Cal. Procedure (1954) § 209, p. 1187), one could find a possibility that appellants could amend this proposed amended complaint to show that the four directors in question, as did Vesper in *Reid* v. *Robinson*, "knew just what was being done and, with such knowledge, assisted in carrying out some of the details and thereafter concealed the facts from the" appellants.

The record in this case suggests that the proposed amended complaint should not be so liberally construed in favor of appellants. The issues framed by the motions for security furnished an impelling motivation for appellants to present to the lower court, and so in the record before this court, such allegations and factual matters as would evidence acts or omissions of these respondents other than the votes cast at meetings of the board of directors. It is no abuse of discretion to deny leave to amend a subsequent pleading where defects occurring in the original are not cured. Under these circumstances it is proper to conclude that the most that can be alleged and proved to show concerted action by the four named directors is that they were negligent and remiss in their responsibilities as directors in that they blindly approved the transaction presented by McFadden, McLaren, Long and Fant.

The case is similar to *Findley* v. *Garrett, supra,* wherein it is stated: "The trial court did not abuse its discretion in not granting leave to amend. In the original complaint it was alleged upon information and belief that in furtherance of the

fraudulent plan and conspiracy the organizers of Garrett acted secretly as to Douglas, its directors and stockholders. In the amended complaint it is alleged upon information and belief that each person who became a director of Douglas after 1936 did so with knowledge of the conspiracy. It thus appears that the allegations of the amended complaint directly contradict the allegations of the original complaint with respect to whether the directors of Douglas, other than those who were organizers of Garrett, had knowledge of the alleged conspiracy. No explanation, or purported explanation, is given in the amended complaint for the contradiction or complete change of theory with respect to the independent or nonprofiting directors.'' (109 Cal.App.2d 166, 179.) So here no explanation is given as to how the four directors who were members of a board, which was not initially informed of the true amount of property involved, nor even advised of the true interest of Long, nor of the true status of the negotiations, could be acting in concert with McFadden, McLaren, Long and Fant. They were only alleged to be negligent and remiss in the original complaint, and, as contrasted with McFadden and McLaren, they are not the subject of additional specific allegations in the proposed amended complaint. The inference that because McFadden and McLaren used their influence on them they too were active in the fraud, must yield to the failure to so allege after issue was joined on that point by the demurrer and motions for security.

The place of the Foundation in the action is somewhat enigmatic. If it had been the recipient or a conduit for the fruits of any actual or constructive fraud of the directors of the Company, it would properly be liable for the same. (See *Kennerson* v. *Burbank Amusement Co., supra,* 120 Cal.App. 2d 157, 171; *Remillard Brick Co.* v. *Remillard-Dandini Co., supra,* 109 Cal.App.2d 405, 419-420.) It should not, however, in the absence of such profit be charged with the misfeasance, if any, of its officers or directors. Any actions on their part in connection with the Company, which would reduce the Company's worth, in turn, would reduce the worth of the Foundation's interest in the Company. It would be paradoxical to hold the principal liable for the acts of its agents under such circumstances.

(C) The appellants are not barred by any purported ratification by the Company, the directors or its stockholders.

Respondent Long points to the fact alleged, and apparently admitted, that on June 25, 1962 the board of directors refused to authorize the filing of this action on behalf of the Company

and thereby impliedly ratified the transaction with full knowledge of the facts. In *Findley* v. *Garrett, supra,* the court stated: "*[T]he great majority of the 1948 board of directors had no interest in Garrett.* The board was aware of the dual position and conflicting duties of those individuals who were or had been directors of both corporations, and it was aware of the magnitude of the purchases made by Douglas from Garrett over a period of 12 years. There was no manifest breach of duty in its decision not to commence an action. The board exercised its business judgment. Under such circumstances, a stockholder may not usurp the discretionary powers of the managers of the corporation by commencing a derivative action. If, under such circumstances, the court should entertain such an action it would be substituting its own business judgment for that of the directors. The determination of the matter by the board of directors is a bar to the action herein." (109 Cal.App.2d at pp. 178-179; italics added.) In this case the resolution to authorize filing of the action was defeated by a vote of five to two. Of the five directors voting in the negative, two as stated above were charged with positive misfeasance involving Long. Disregarding those votes leaves three votes or less than a majority of the total board. If any weight is given to the allegation that McFadden and McLaren dominated and controlled Gerdes and Wheeler, their votes (as distinguished from any attempt to make them actors in the prior transaction solely by reason of such domination and control) should also be disregarded. (See *Findley* v. *Garrett, supra,* 109 Cal.App.2d 166, 176.) The only independent vote for ratification is that of the new president.

Furthermore, if the conduct of Long, McFadden and McLaren consisted of waste of the assets of the Company, as alleged, it could not be ratified to the prejudice of the rights of any minority shareholders. (*Kennerson* v. *Burbank Amusement Co., supra,* 120 Cal.App.2d 157, 171; *Remillard Brick Co.* v. *Remillard-Dandini Co., supra,* 109 Cal.App.2d 405, 418-419; *Chounis* v. *Laing, supra,* 125 W.Va. 275, 291 [23 S.E.2d 628, 637].)

If, however, on the true facts the case is reduced to the sole issue of Long's possible conflict of interest, to the exclusion of a successful plot to profit by it at the expense of the Company, prior authorization and subsequent ratification of his participation could be given. (See *San Diego, O. T. & P. Beach R. R. Co.* v. *Pacific Beach Co.* (1896) 112 Cal. 53, 62-63 [44 P. 333, 33 L. R. A. 788]; *Fudickar* v. *East Riverside*

*Irr. Dist.* (1895) 109 Cal. 29, 41 [41 P. 1024]; Corp. Code, § 820; 3 Fletcher Cyc. Corp. (1965) § 979, p. 503.)

(D) The appellants did not themselves ratify the transaction.

It is nowhere suggested that appellant Clarke by act or omission has ratified the transaction. Respondents do assert that the facts which have been alleged show that appellant Burt approved the preliminary steps for exchange of the property at the meetings of January 8 and July 9, 1959; that at the September 21st meeting she authorized McFadden to accept one of the offers and approved Long's participation in the purchasing group; that although she voted against the transaction on October 13, she then, if not earlier, became aware of the scope of the property involved; and that on October 20, she approved the acquisition of the Imperial Valley ranches at designated prices after personally participating in the inspection and selection of those properties.

A shareholder may be barred or estopped from attacking a transaction because he has authorized or ratified it. (*San Diego, O. T. & P. Beach R. R. Co.* v. *Pacific Beach Co., supra,* 112 Cal. 53, 63-64; *Ripley* v. *Colwell* (S.Ct. 1954) 206 Misc. 46 [129 N.Y.S.2d 578]; *Robertson* v. *Schoonmaker* (S.Ct. 1935) 158 Misc. 627 [285 N.Y.S. 204]; *Gray* v. *Aspironal Laboratories* (5th Cir. 1928) 24 F.2d 97; *Chounis* v. *Laing, supra,* 125 W.Va. 275, 293 [23 S.E.2d 628, 638].) A general authorization or ratification will not cover matters not disclosed. (See *Hotaling* v. *Hotaling* (1924) 193 Cal. 368, 377-378 [224 P. 455, 56 A.L.R. 734]; and *Turner* v. *Citizens National Bank* (1962) 206 Cal.App.2d 193, 204 [23 Cal.Rptr. 698].)

Appellant Burt claims concealment of the amount of property which was authorized to be conveyed, and that she was misled as to the extent of the interest of respondent Long. Her approval on September 21st could not cover matters not disclosed. She expressly disapproved the transaction as reported by McFadden on October 13th; and made it clear that her approval of the Imperial Valley properties was not a ratification of the exchange out of the Newport Beach property.

Each side has spent considerable effort in analyzing the exact quantum of interest of respondent Long in the transaction. The fact that he ended up with 39.5 per cent interest in the pre-1959 subdivision is not responsive to the inquiry made. It is obvious that the pertinent interest was that to which he was entitled on September 21st when the subject was discussed. For the same reason the complex computation by which he shows that in April 1960 he ended up with 42.5 per cent

through his interest in various corporations is not determinative of the issue as to whether or not there was a concealment or misrepresentation at that meeting. From all that appears in September and October he was entitled to a one-third interest in the single family dwelling lots, subject only to such commitments (from which it may be assumed he received a consideration) as he may have then or thereafter made with Wells in regard to the one-half of the 49.35 acres which were conveyed to them in January 1960. The materiality of any alleged misrepresentation in this regard can only bear on the general evidentiary picture insofar as it supports appellants' theory of scheme and design, and insofar as it precludes the authorization for which Burt voted September 21st from estopping her to attack the conveyance. As noted above, however, if the interest of Long, divorced from inadequate consideration, is all that is produced, the authorization and ratification by the remainder of the board prevents further attack by appellants.

(E) The action is only partially barred by the Statute of Limitations.

The lower court sustained the demurrer of respondents Foundation and related directors on the asserted grounds that the action was barred by the two-year limitation of the first subdivision of section 339 of the Code of Civil Procedure which applies to ''An action upon a . . . obligation or liability not founded upon an instrument of writing, . . .'' The original complaint purported to be predicated upon the negligence of respondent directors. The trial court properly sustained their demurrer, because of the application of the foregoing section. The liability, if any, of the Foundation and the four passive directors, as set forth in the proposed amended complaint and the record, has been analyzed and likewise predicated on negligence. The aforementioned provisions still bar the action as to those respondents. An action predicated on the neglect or acquiescence of the directors and majority shareholder was barred at the expiration of two years following the transaction and prior to July 31, 1962. (*Fox* v. *Hale & Norcross Silver Min. Co., supra,* 108 Cal. 369, 426; *Geo. Pepperdine Foundation* v. *Pepperdine* (1954) 126 Cal.App.2d 154, 163 [271 P.2d 600]; *Cooke* v. *Odell* (1943) 59 Cal.App.2d 820, 829 [140 P.2d 444]; *Southern Counties Thrift Co.* v. *Rairdon* (1941) 47 Cal.App.2d 770, 772 [118 P.2d 828]; *Chance* v. *Guaranty Trust Co. of N. Y.* (S.Ct. 1939) 173 Misc. 754, 761 [20 N.Y.S. 2d 635, 642].)

 On the other hand it is clear that the three-year provision of subdivision 4 of section 338 of the Code of Civil Procedure which governs ''An action for relief on the ground of fraud or mistake'' is applicable to the claims presently alleged against the two directors and the officer who actively participated in the transaction under attack. (*Bainbridge* v. *Stoner, supra,* 16 Cal.2d 423, 430; *Whitten* v. *Dabney, supra,* 171 Cal. 621, 628; *Fox* v. *Hale & Norcross Silver Min. Co., supra,* 108 Cal. 369, 426; *Uchida Investment Co.* v. *Inagaki, supra,* 108 Cal.App.2d 647, 653; *Reid* v. *Robinson, supra,* 64 Cal.App. 46, 54; *Beal* v. *Smith, supra,* 46 Cal.App. 271, 279; *James* v. *P. B. Steifer Mining Co.* (1918) 35 Cal.App. 778, 786 [171 P. 117].) Since action was filed within three years after the transaction occurred, it is unnecessary to speculate as to when appellants discovered or should have discovered the alleged wrongdoing of which they complain.

Appellants' reliance on the three-year provision of section 359 of the Code of Civil Procedure[2] is precluded by many precedents which limit its application to a liability which is created by an express statute or the Constitution. (*Coombes* v. *Getz* (1933) 217 Cal. 320, 334 [18 P.2d 939]; *Whitten* v. *Dabney, supra,* 171 Cal. 621, 628; *Fox* v. *Hale & Norcross Silver Min. Co., supra,* 108 Cal. 369, 425-426; *Southern Counties Thrift Co.* v. *Rairdon, supra,* 47 Cal.App.2d 770, 771-772.)

 Although the four-year period of section 343 of the Code of Civil Procedure[3] has been applied to the breach of the written provisions of an express trust (see *Scott* v. *Symons* (1923) 191 Cal. 441, 456 [216 P. 604]; *Marston* v. *Kuhland* (1907) 151 Cal. 102, 104 [90 P. 188]) and to an action to recover the assets of a corporation which have been illegally transferred (see *Stewart* v. *Indian Creek Lumber Co.* (1961) 192 Cal.App.2d 93, 97 [13 Cal.Rptr. 397]), there is no warrant for extending to four years the time within which to commence an action for damages for negligence or for fraud.

 As a corollary of the general principle that an action for relief on the grounds of fraud or mistake may be brought within three years of the discovery of the facts constituting

---

[2] Code of Civil Procedure section 359 provides: ''This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce liability created by law; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created.''

[3] Code of Civil Procedure section 343 provides: ''An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued.''

the fraud or mistake, it is generally held that an action for fraud committed against a corporation is tolled for the period that those responsible for the fraud remain in control of the corporation. (See *San Leandro Canning Co., Inc.* v. *Perillo* (1931) 211 Cal. 482, 487 [295 P. 1026]; *Reid* v. *Robinson, supra,* 64 Cal.App. 46, 55; *Beal* v. *Smith, supra,* 46 Cal.App. 271, 279.) The principle does not apply after discovery of the fraud by a protesting stockholder, and cannot be applied to a cause of action predicated upon negligence. (See *Fox* v. *Hale & Norcross Silver Min. Co., supra,* 108 Cal. 369, 426.)

(F) Conclusion.

The facts as presented by appellants when reviewed in the light most favorable to them reflect that any cause of action they might assert against respondents Foundation, Gerdes, Scarborough, Wheeler and Honer is barred by the provisions of section 339, subdivision 1 of the Code of Civil Procedure. The action of the lower court in sustaining the demurrer and denying leave to amend as to those parties and the ensuing judgment in their favor must be sustained.

It appears that appellants can allege a timely cause of action against the respondents McFadden, McLaren and Long and the case should be reversed as to them with leave to appellants to file an amended complaint.

 Although the action is one to recover damages and not the property conveyed, there is a demand for an accounting not only from Long, but from his related companies. They may, therefore, be properly before the court insofar as a cause of action is stated for such accounting.

## II. *The appeal from the order requiring appellants to furnish security.*

Under the provision of section 834 of the Corporations Code the basic question is whether or not the trial judge abused his discretion in determining that there was no reasonable possibility that the prosecution of this action would benefit the Company and its shareholders.[4] (*Marble* v. *Latchford Glass*

---

[4]Corporations Code section 834 provides insofar as is material here as follows: "(b) In any such [derivative] action, at any time within 30 days after service of summons upon the corporation or any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or such defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish security as hereinafter provided. Such motion shall be based upon one or more of the following grounds:

"(1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders;

*Co., supra,* 205 Cal.App.2d 171, 175; and see *Beyerbach* v. *Juno Oil Co.* (1954) 42 Cal.2d 11, 24 [265 P.2d 1]; *Chase* v. *Super-Cold Corp.* (1958) 163 Cal.App.2d 83, 88-89 [328 P.2d 812]; *Thomas* v. *Summers Gyroscope Co.* (1958) 160 Cal. App.2d 234, 245 [324 P.2d 893]; *Kaiser* v. *Easton, supra,* 151 Cal.App.2d 307, 315; *Olson* v. *Basin Oil Co., supra,* 136 Cal.App.2d 543, 545; *Barber* v. *Lewis & Kaufman, Inc.* (1954) 125 Cal.App.2d 95, 99 [269 P.2d 929]; *Wood* v. *Gordon* (1952) 112 Cal.App.2d 374, 376 [246 P.2d 84]; *Oser* v. *Wilcox* (9th Cir. 1964) 338 F.2d 886, 893.)[5]

█ The burden of establishing the statutory condition is on the party moving for security. (*Beyerbach* v. *Juno Oil Co., supra,* 42 Cal.2d 11, 24; *Wood* v. *Gordon, supra,* 112 Cal. App.2d 374, 376.) █ Where the evidence is conflicting the implied finding of the trial court, if based on sufficient evidence, is binding upon the appellate court. (*Beyerbach* v. *Juno Oil Co., supra,* 42 Cal.2d 11, 24-25; *Marble* v. *Latchford Glass Co., supra,* 205 Cal.App.2d 171, 176; *Olson* v. *Basin Oil Co., supra,* 136 Cal.App.2d 543, 555; *Barber* v. *Lewis & Kaufman, Inc., supra,* 125 Cal.App.2d 95, 99-100; *Wood* v. *Gordon, supra,* 112 Cal.App.2d 374, 376.)

█ The judgments as to Gerdes, Scarborough, Wheeler and Honer, having been approved, the motion for security was properly granted as to them and the order must be affirmed to that extent. (See *Kaiser* v. *Easton, supra,* 151 Cal.App.2d 307, 315.)

''(2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity.

''The court on application of the corporation or any defendant may, for good cause shown, extend such 30-day period for an additional period or periods not exceeding 60 days.

''At the hearing upon such motion, the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material: (a) to the ground or grounds upon which the motion is based, or (b) to a determination of the probable reasonable expenses, including attorney's fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties at the hearing, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the nature and amount of security to be furnished by the plaintiff for reasonable expenses, including attorney's fees, which may be incurred by the moving party and the corporation in connection with such action, including expenses for which said corporation may become liable pursuant to Section 830.''

[5]More accurately in view of the language in the last paragraph of subdivision (b) the test is whether ''the moving party has established a probability in support of'' the proposition ''That there is no reasonable possibility that the prosecution . . . will benefit the corporation or its security holders.'' (See *Oser* v. *Wilcox, supra,* 338 F. 2d 886, 893 and 1 Ballantine & Sterling, Cal. Corp. Laws (4th Ed. 1964) § 90.05, n. 18, p. 172.)

A consideration of the denials, explanations and affirmative allegations contained in the declarations and depositions filed by respondents discloses sufficient evidence to show that the transaction was within the ''business judgment rule'' and may well have been for the best interests of the Company. If the facts recited in the declarations of McFadden, McLaren and Fant are accepted, and those advanced by appellants and their witnesses are disregarded, there is evidence to show that the officers and directors proceeded in good faith at all times, that there was a full disclosure of Long's interest, and that adequate consideration was received for the property. Under such circumstances the requirement of security is not an abuse of discretion. (*Marble* v. *Latchford Glass Co., supra,* 205 Cal.App.2d 171, 178-179; *Chase* v. *Super-Cold Corp., supra,* 163 Cal.App.2d 83, 88-89; *Thomas* v. *Summers Gyroscope Co., supra,* 160 Cal.App.2d 234, 245; *Olson* v. *Basin Oil Co., supra,* 136 Cal.App.2d 543, 559; *Barber* v. *Lewis & Kaufman, Inc., supra,* 125 Cal.App.2d 95, 99-100.)

It does appear, however, from the record on the concurrent appeal that the trial court at the time it granted the motion entertained the erroneous conclusions that plaintiffs could not state a cause of action against McFadden, McLaren and Long, and that any cause of action against the first two was barred by the statute of limitations. If this court were to sustain the order insofar as it requires security for those three respondents, it would be substituting its judgment for that properly vested in the trial court. The proper procedure appears to be to reverse the order requiring security for the three involved for reconsideration of their motions in the light of this decision. (In *Oser* v. *Wilcox, supra,* 338 F.2d 886, the reviewing court ordered such a remand because the trial court had granted the motion for security on an erroneous ground. Insofar as security has been ordered for the Company, the order should be affirmed without prejudice, however, to the right of the trial court to modify it as security may or may not be required for the benefit of the remaining codefendants.

The results set forth pose a problem as to costs on appeal. Equity dictates that one-half the cost of the record and of its filing in this court be borne by appellants, one-quarter by respondents McFadden and McLaren, and one-quarter by respondents Long et al. Appellants are entitled to reimbursement for one-half of any other taxable costs incurred by them in equal shares from respondents McFadden and McLaren

on the one hand, and respondents Long et al. on the other. Conversely the successful respondents are entitled to recover one-half of any other taxable costs incurred jointly on their behalf with McFadden and McLaren, from appellants.

The judgment is affirmed as to the respondents Foundation, Gerdes, Scarborough, Wheeler and Honer, and reversed as to the remaining respondents with directions to the trial court to grant the plaintiffs a reasonable time within which to prepare, serve and file a further complaint against the remaining defendants, amended in such particulars as they may be advised.

The order requiring plaintiffs to furnish security is affirmed as to respondents Gerdes, Scarborough, Wheeler, Honer, and the Irvine Company, and reversed and remanded for further proceedings in respect of the respondents McFadden, McLaren and Long.

Let costs be divided and apportioned as hereinabove set forth.

Sullivan, P. J., and Molinari, J., concurred.

A petition for a rehearing was denied November 29, 1965.